LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq., SBN 144074 | dalekgalipo@yahoo.com
Thomas C. Seabaugh, Esq., SBN 272458 | tseabaugh@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

CHAIN COHN STILES
David K Cohn, Esq., SBN 68768 | dcohn@chainlaw.com
Neil K. Gehlawat, Esq., SBN 289388 | ngehlawat@chainlaw.com
1430 Truxtun Ave., Suite 100
Bakersfield, CA 93301
Telephone: (661) 323-4000
Facsimile: (661) 324-1352

*Attorneys for Plaintiffs M.L.S., C.J.S., C.R.S., E.Z.S., Merri Silva, and Salvador Silva*

[continued on next page]

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

TARA GARLICK, individually; M.L.S., C.J.S., C.R.S., and E.Z.S., minors, by and through their guardian *ad litem*, Judy Silva, in each case individually and as successors in interest to David Silva, deceased; J.S., individually and as successor in interest to David Silva, by and through her guardian *ad litem* Adriane Dominguez; MERRI SILVA, individually; and SALVADOR SILVA, individually,

Plaintiffs,

vs.

COUNTY OF KERN, a municipality; DONNY YOUNGBLOOD, an individual; DOUGLAS SWORD, an individual; RYAN GREER, an individual; TANNER MILLER, an individual; JEFFREY KELLY, an individual; LUIS ALMANZA, an individual; BRIAN BROCK, an individual; DAVID STEPHENS, an individual; MICHAEL PHILLIPS, an individual, MICHAEL BRIGHT, an individual; DOES 1-10, inclusive;

Defendants;

and consolidated action.

Lead Case No.1:13-CV-01051-LJO-JLT

**SECOND AMENDED COMPLAINT FOR DAMAGES**

1. Fourth Amendment—Excessive Force (42 U.S.C. § 1983)
2. Fourth Amendment —Integral Participation (42 U.S.C. § 1983)
3. Fourth Amendment—Failure to Intervene (42 U.S.C. § 1983)
4. Fourth Amendment—Denial of Medical Care (42 U.S.C. § 1983)
5. Substantive Due Process (42 U.S.C. § 1983)
6. Municipal Liability—Inadequate Training (42 U.S.C. § 1983)
7. Municipal Liability—Ratification (42 U.S.C. § 1983)
8. Municipal Liability—Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)
9. Battery (Wrongful Death)
10. Negligence (Wrongful Death)
11. Violation of Bane Act (Cal. Civil Code §52.1)

**DEMAND FOR JURY TRIAL**

[continued from previous page]

ADANTÉ D. POINTER, ESQ.
Law Offices of John L. Burris
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200
Facsimile: (510) 839-3882

*Attorneys for Plaintiff J.S.*

Daniel Rodriguez, Esq., SBN 096625
Joel T. Andreesen, Esq. SBN 152254
Chantal A. Trujillo, Esq., SBN 289493
RODRIGUEZ & ASSOCIATES
A PROFESSIONAL LAW CORPORATION
2020 Eye Street
Bakersfield, CA 93301
Tel. No.: (661) 323-1400
Fax No.: (661) 323-0132

*Attorneys for Plaintiff Tara Garlick*

## COMPLAINT FOR DAMAGES

M.L.S., C.J.S., C.R.S., and E.Z.S., minors, by and through their guardian *ad litem*, Judy Silva, in each case individually and as successors in interest to David Silva, deceased; TARA GARLICK, individually; MERRI SILVA, individually; SALVADOR SILVA, individually; J.S., individually and as succesor in interest to David Silva, by and through her guardian ad litem Adriane Dominguez (all together, "Plaintiffs"), for their complaint against County of Kern ("County"), Donny Youngblood, Douglas Sword, Ryan Greer, Tanner Miller, Jeffrey Kelly, Luis Almanza, Brian Brock, David Stephens, Michael Phillips, Michael Bright, and Does 1-10, inclusive, (all together, "Defendants") allege as follows:

## INTRODUCTION

1. This civil rights and wrongful death action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the fatal police beating of David Silva, on May 7, 2013.

2. The beating and death of Mr. Silva at the hands of the defendants constitutes one of the most egregious instances of police brutality in the country in recent memory, and it was featured prominently on national and international news. One remarkable feature of the case is that one or more eyewitnesses called 9-1-1 to report the beating while it was in progress. The eyewitnesses begged for someone to stop the beating and to protect Mr. Silva. In response – instead of taking steps to stop the beating – deputies targeted the eyewitnesses for detention, arrest, threats, and bullying. The eyewitnesses were threatened and coerced into turning over their cellphones, which they had used to record the beating. When their cellphones were finally returned, one or more of the videos of the beating had been deleted.

3. This case is in the public interest.

**PARTIES**

4. At all relevant times, David Silva ("Mr. Silva" or "Decedent") was an individual residing in the County of Kern, State of California.

5. At all relevant times, Plaintiffs M.L.S., C.J.S., C.R.S., E.Z.S., and J.S. (together, the "Child Plaintiffs") are Decedent's minor children. Plaintiffs M.L.S., C.J.S., C.R.S., E.Z.S., and J.S. sue both in their individual capacity as the children of Decedent and in representative capacities as successors in interest to Decedent pursuant to California Code of Civil Procedure § 377.60(a).

6. At all relevant times, the Child Plaintiffs were dependent on Decedent, including financially dependent.

7. A separate lawsuit has been filed on behalf of J.S., entitled *J.S. v. County of Kern* (case no. 14-cv-00419 LJO-JLT). That case has been consolidated with this one. Plaintiff J.S. brings this suit individually and as succesor in interest to David Silva, by and through her guardian ad litem Adriane Dominguez.

8. Plaintiffs M.L.S., C.J.S., C.R.S., and E.Z.S. bring this suit individually and as successors in interest to David Silva, by and through their guardian ad litem Judy Silva.

9. At all relevant times, Plaintiff Tara Garlick was the natural mother of Plaintiffs M.L.S., C.J.S., C.R.S., and E.Z.S., and she was the girlfriend of the Decedent.

10. Plaintiff Tara Garlick specifically alleges as follows: Ms. Garlick and Mr. Silva were in a monogamous relationship and lived together for more than eleven years immediately before Mr. Silvia's death. Ms. Garlick and Mr. Silva constantly referred to each other as husband and wife. Ms. Garlick and Mr. Silva had four children together, the eldest child being born on March 14, 2003. Ms. Garlick and Mr. Silva raised all of their biological children together in a single household, taking their kids to doctors' appointments, throwing birthday parties, and

cooking and eating family meals together. Ms. Garlick and Mr. Silva attended all of their children's school functions together, including but not limited to parent teacher conferences and assemblies. The intimate long term familial relationship between Ms. Garlick and Mr. Silva is supported by facts, including but not limited to the facts stated above, that clearly evidence "procreation, raising and educating children, cohabitation, and/or the other activities of family life" between Ms. Garlick and Mr. Silva. As such Ms. Garlick's intimate long-term familial relationship is entitled to constitutional protections.

11. At all relevant times, Defendants Michael Phillips ("Phillips") and Michael Bright ("Bright") were officers for the California Highway Patrol and were acting under color of law within the course and scope of their duties as officers for the California Highway Patrol and with the complete authority and ratification of their principal, the California Highway Patrol. Defendants Phillips and Bright proximately caused Decedent's injuries by administering the blows that killed him, by integrally participating or failing to intervene in the beating, and by engaging in other acts and/ or omissions described below.

12. At all relevant times, Defendants Douglas Sword ("Sword"), Ryan Greer ("Greer"), Tanner Miller ("Miller"), Jeffrey Kelly ("Kelly"), Luis Almanza ("Almanza"), Brian Brock ("Brock"), and David Stephens ("Stephens") were duly authorized employees and agents of the County, subject to oversight and supervision by the County's elected and non-elected officials, and were acting under color of law within the course and scope of their duties as sheriff's deputies for the Kern County Sheriff's Department and with the complete authority and ratification of their principal, Defendant County. Defendants Sword, Greer, Miller, Kelly, Almanza, Brock, and Stephens also proximately caused Decedent's injuries by administering the blows that killed Decedent, by integrally participating or failing to

intervene in the beating, and by engaging in other acts and/ or omissions described below.

13. Defendant Donny Youngblood ("Youngblood") also proximately caused Decedent's and Plaintiffs' injuries by engaging in the acts and/or omissions described below. At all relevant times, Youngblood was a duly authorized employee and agent of the County and was employed by Defendant County as the Sheriff of the Kern County Sheriff's Department. At all relevant times, Defendant Youngblood was acting under color of law within the scope of his duty as the Sheriff of the Kern County Sheriff's Department and with the complete authority and ratification of his principal, Defendant County.

14. Defendant County of Kern ("County") also proximately caused Decedent's and Plaintiffs' injuries and is liable under state law and under principles set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Defendant County is a chartered subdivision of the State of California with the capacity to sue and be sued. At all relevant times, Defendant County is and was a duly organized public entity, form unknown, existing under the laws of the State of California. Defendant County is responsible for the actions, omissions, policies, procedures, practices and customs of its various agents and agencies. At all times relevant to the facts alleged herein, Defendant County was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees complied with the laws and the Constitutions of the United States and of the State of California. At all relevant times, County was the employer of Defendants Youngblood, Sword, Greer, Miller, Kelly, Almanza, Brock, Stephens, and Does 1-10.

15. At all relevant times, each of Defendants Does 6-10, inclusive, was a sheriff's deputy and/ or managerial, supervisorial, and policymaking employee of the Kern County Sheriff's Department, who was acting under color of law within

the course and scope of his duties as a sheriff's deputy and/ or managerial, supervisorial, and policymaking employee for the Kern County Sheriff's Department and with the complete authority and ratification of his principal, Defendant County. Defendants Does 1-5 caused Decedent's and Plaintiffs' injuries by integrally participating or failing to intervene in the beating, and by engaging in other acts and/ or omissions around the time of the beating that resulted in his death.

16. In doing the acts and failing and omitting to act as hereinafter described, Defendants Youngblood, Sword, Greer, Miller, Kelly, Almanza, Brock, Stephens, and Does 1-10 were acting on the implied and actual permission and consent of County. Upon information and belief, they are each residents of the County of Kern.

17. At all times mentioned herein, each and every County Defendant was the agent of each and every other County Defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every County Defendant.

18. The true names of Defendants Does 1-10, inclusive, are unknown to Plaintiffs, who therefore sue these defendants by such fictitious names. Plaintiffs will seek leave to amend this complaint to show the true names and capacities of these defendants when they have been ascertained. Each of the fictitiously-named defendants is responsible in some manner for the conduct and liabilities alleged herein.

19. On information and belief, at all relevant times, Defendants Phillips, Bright, Youngblood, Sword, Greer, Miller, Kelly, Almanza, Brock, Stephens, and Does 1-10 (all together, the "Officer Defendants") were residents of the State of California.

20. The Officer Defendants are directly liable for Decedent's and Plaintiffs' injuries under federal and state law, including pursuant to 42 U.S.C. § 1983, and are sued in their individual capacities for damages only.

21. At all relevant times, Defendants Sword, Greer, Miller, Kelly, Almanza, Brock, and Stephens were acting under color of law and as employees of the Kern County Sheriff's Department.

22. At all relevant times, Defendants Phillips and Bright were acting under color of law and as employees of the California Highway Patrol.

23. On July 8, 2013 Plaintiffs M.L.S., C.J.S., C.R.S., and E.Z.S. filed comprehensive and timely claims for damages with the County and the State of California pursuant to applicable sections of the California Government Code.

24. On July 30, 2013, the County denied the claims of Plaintiffs M.L.S., C.J.S., C.R.S., and E.Z.S. in writing. On August 23, 2013, the State of California denied the claims of Plaintiffs M.L.S., C.J.S., C.R.S., and E.Z.S. in writing.

## JURISDICTION AND VENUE

25. This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the First, Fourth, and Fourteenth Amendments of the United States Constitution. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

26. Venue is proper in this Court under 28 U.S.C. § 1391(b) because all incidents, events, and occurrences giving rise to this action occurred in the County of Kern, California.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

27. The foregoing allegations are incorporated as if re-alleged herein.

28. On May 7, 2013 at approximately 11:00 p.m., Mr. Silva was lying on the front lawn of a home across from Kern Medical Center at the intersection of Flower Street and Palm Street in Bakersfield, California.

29. Deputy Kelly responded to the scene based on information that a possibly intoxicated person was lying near the south corner of the intersection. Deputy Kelly is a "K-9" officer, and his police dog is named "Luke."

30. When Deputy Kelly arrived at the scene, Mr. Silva was unresponsive and unconscious. Mr. Silva was at this point in some form of medical distress. Mr. Silva did not respond to Deputy Kelly's verbal questions.

31. Instead of summoning medical assistance for the Mr. Silva, Deputy Kelly performed a "knuckle rub" on Mr. Silva, which is intended to cause excruciating pain and discomfort. The pain caused Mr. Silva to stir. Mr. Silva tried to speak, but his speech was slurred and his words were unintelligible.

32. While Mr. Silva was in a seated position on the ground, Deputy Kelly attacked Mr. Silva by striking him with his baton. At the time he was attacked by Deputy Kelly, Mr. Silva was not actively resisting and was not a threat to anyone.

33. Using his baton, Deputy Kelly struck Mr. Silva in the head, on the right side of his torso, and on his right arm. Mr. Silva yelled, "Help! Help!"

34. Deputy Kelly threatened to have his dog bite Mr. Silva. Then Deputy Kelly actually ordered his dog to bite Mr. Silva. The dog bit Mr. Silva, including on the left side above his waist, on his leg, and on or near his face. While he was being bitten by the dog, Mr. Silva screamed in pain. While Mr. Silva was being bitten by the dog, Deputy Kelly applied weight to his back.

35. Sergeant Sword was the next of the Officer Defendants on the scene. He approached and struck Mr. Silva with his baton several times. He struck Mr. Silva on the head, on his legs and arms, and on his back near his ribcage.

36. Sergeant Sword continued to strike Mr. Silva even though he observed that Mr. Silva was bleeding all over his face.

37. Next, approximately two or three other Defendant Officers arrived. The Defendant Officers present continued to hit Mr. Silva and tell him to get on the ground, even though he was already on the ground.

38. Deputy Almanza struck Mr. Silva at least twice with his baton, including on his right arm. Neither Deputy Almanza nor any other Defendant Officers attempted to render or summon medical aid to Mr. Silva.

39. Standard peace officer training in California includes training that striking someone in the head with a baton constitutes lethal or deadly force.

40. At the time that Mr. Silva was being struck in the head with a baton, he was unarmed, prone, and restrained.

41. The baton strikes produced a loud sound like bones breaking, which was heard by one or more eyewitnesses.

42. Deputy Stevens used his body weight to hold Mr. Silva down during the beating. Deputy Stevens applied body weight to Mr. Silva's upper shoulder area. Deputy Stevens also attempted to place Mr. Silva in a modified rear wrist lock.

43. Deputy Brock was holding Mr. Silva's legs down during the beating. Deputy Miller pushed down on Deputy Brock's back to apply additional weight to Mr. Silva.

44. CHP Officers Bright and Phillips applied their body weight to Mr. Silva's back or left shoulder during the beating.

45. Officer Phillips applied force to Mr. Silva's head during the beating. Deputy Phillips also helped manipulate the hobble restraint and handcuffs, including by placing Mr. Silva in the "hogtie" position.

46. Officer Bright applied force to Mr. Silva's right arm, including by pulling it behind his back.

47. Upon information and belief, each of the Officer Defendants applied weight or downward pressure to some part of Mr. Silva's body while he was prone and restrained.

48. At one point during the beating, one of the Defendant Officers was sitting on Mr. Silva's legs, and one of the Defendant Officers was sitting on his back.

49. Throughout the beating, the Defendant Officers were telling Mr. Silva to "stop resisting" even though Mr. Silva was not resisting.

50. Upon information and belief, Mr. Silva was not resisting during the beating. If Mr. Silva was moving at all, it was because he was being struck by batons and bitten by a dog, because he was reacting to the pain of the baton strikes and dog bites, and because he was unable to breathe.

51. The Defendant Officers could see that striking Mr. Silva with their batons was not having any helpful effects. It was not helping to secure Decedent's compliance and it was not helping to resolve or deescalate the situation. However, they continued to strike Mr. Silva with their batons. The Defendant Officers continued using force against the Decedent even once he was secured and restrained, including after he was handcuffed.

52. While some Defendant Officers held Mr. Silva down, other Defendant Officers struck Mr. Silva in the head and on the rest of his body with batons.

53. Laura Vasquez, a civilian eyewitness to the beating, observed that Mr. Silva was struck "really hard" on the top of his head near the right side and on then the middle top portion of his head with a baton. Laura Vasquez saw Mr. Silva being struck at least three times in the head with a baton.[1]

---

[1] The quote observations of eyewitnesses are gathered from summaries of interviews, obtained by a Public Records Act request.

54. Sulina Vasquez, a civilian eyewitness, also observed Mr. Silva being "attacked" by the Officer Defendants. She saw that Mr. Silva was "covered in blood." She heard Mr. Silva say, "Don't hit me in the head." She also saw at one point approximately 10 or 11 police officers on top of Mr. Silva. She also heard the police officers say "quit resisting" even though Mr. Silva was not doing anything. She observed that Mr. Silva never punched or kicked the officers. She saw Mr. Silva being struck in the chest, arms, and head, and his face was bleeding.

55. While she was observing the beating, Sulina Vasquez asked other bystanders to call the police. Bystanders told her, "They are the police."

56. After Mr. Silva was struck in the head with a baton, he said, "I'm down. I'm down." Mr. Silva was bleeding profusely from his head, and there was blood on the ground. Mr. Silva also cried out, "Don't hit me in the head."

57. During the beating, Mr. Silva yelled for help. He said, "Don't hit me! Somebody help me! I'm not doing anything!"

58. As the beating continued, two additional Defendant Officers arrived. These officers pinned Mr. Silva's arms to his feet. After these Defendant Officers arrived, two or more Defendant Officers continued to strike Mr. Silva with batons, while two other Defendant Officers sat on Mr. Silva's legs.

59. The beating continued for several minutes, with one witness estimating that it lasted up to a half an hour. The Defendant Officers (in an unknown order) converged on the scene during the beating. Eventually, ten or eleven police officers were participating in the beating of Mr. Silva, either by holding him down or by striking him.

60. During the beating, the Defendant Officers placed handcuffs on Mr. Silva's wrists and a "hobble" restraint around Mr. Silva's feet. Then the Defendant Officers positioned Mr. Silva chest down in a "hogtie" position.

61. While restrained in the hogtie position, Mr. Silva's breathing became impaired and he began to asphyxiate.

62. Meanwhile, the Defendant Officers decided to place a "spit sock" over Mr. Silva's head. This is essentially a plastic bag that covers a person's head. This "spit sock" further interfered with Mr. Silva's breathing. Deputy Greer put the spit sock over Mr. Silva's head.

63. While hogtied with the spit sock over his head, the Mr. Silva vomited into the spit sock.

64. While Mr. Silva was being beaten, he was making audible gargling noises because he was drowning in his own blood and vomit.

65. The Defendant Officers kept using force against Mr. Silva until he stopped moving. While the Defendant Officers were using force against Mr. Silva and applying pressure to his body, Mr. Silva was restrained and handcuffed.

66. The Defendant Officers continued to strike Mr. Silva with batons even after Mr. Silva stopped moving.

67. Joseph Williams, a private security officer, saw the Defendant Officers striking Mr. Silva with batons. He also saw Mr. Silva being attacked by a police dog.

68. Robert O'Connor, also a private security officer, observed the Defendant Officers striking Mr. Silva with their batons and yelling at him. O'Connor said that Mr. Silva was making noises that sounded like he was in pain. O'Connor believes that the use of force against Mr. Silva was excessive under the circumstances.

69. From his home window, Danny Medina observed Mr. Silva on the ground with two deputies standing over him, one of whom was striking him with a baton. These baton strikes were "indiscriminate," including the upper and lower portions of Mr. Silva's body. Medina then observed additional deputies arriving and

piling on Mr. Silva. Medina heard Mr. Silva yelling, “Help me!” in a panicked voice. Medina remembers this yell for help as sending a chill down his spine. Medina saw two deputies standing over Mr. Silva and three deputies holding Mr. Silva down. Medina saw one deputy lying on top of Mr. Silva and punching him.

70. Celina Dorsett saw the incident from her home window. She saw a deputy standing over Mr. Silva, who was seated on the ground, and then she saw the deputy begin hitting Mr. Silva with a baton. The deputy began striking Mr. Silva with a baton while Mr. Silva was merely sitting on the ground. She was able to hear bones breaking during the beating, and she felt that she wanted to stop the deputies from hurting Mr. Silva. She saw that some deputies were hitting Mr. Silva with batons, and others were hitting him with their hands. She remembers hearing Mr. Silva yell, “Help!” She never saw Mr. Silva kick anyone. She did not think so many deputies were necessary to arrest a person who was merely appeared to be intoxicated. Celina Dorsett believes, based on what she observed, that Mr. Silva was beaten to death.

71. Jason Land, a pedestrian passing through the area, saw Mr. Silva “face down begging for his life” while he was attacked by a police dog and a deputy who was using his knee to push Mr. Silva’s face into the ground. Mr. Silva was “wiggling” and begging for help. The deputies “beat him till he stopped moving.” Land observed the deputies using their batons to “beat that man till they killed him.” During the beating, Mr. Silva “was yelling help.” Land described the beating as resembling a “gang fight.”

72. Efren Ceballos, also an eyewitness, observed two deputies sitting on Mr. Silva, who was lying on his stomach. She estimates that this lasted a few minutes.

73. Mr. Silva died in the course of the beating. Among the likely causes of death, without limitation, are (1) restraint asphyxia, (2) compression asphyxia, (3) a

cardiac arrhythmia caused by the beating and restraint, (4) baton strikes and trauma to his head, and (5) a combination of the above.

74. Mr. Silva died while he was restrained and while Defendant Officers were applying weight to his back.

75. At no time did the Defendant Officers perform CPR or otherwise render or summon medical assistance to Mr. Silva.

76. When paramedics arrived, Mr. Silva did not have a pulse. Mr. Silva died before the paramedics arrived.

77. At all relevant times, Mr. Silva was in medical distress.

78. At all relevant times, Mr. Silva was completely unarmed. He did not have a weapon or anything that looked like a weapon.

79. Upon information and belief, the Defendant Officers were also involved in other undiscovered conduct that contributed to Mr. Silva's death.

80. The beating of Mr. Silva was partially captured on cell phone by one or more eyewitnesses. It was also partially captured on surveillance video.

81. Francisco Arrieta partially recorded the incident on his cell phone. After the incident, one or more of Defendant Officers and other unnamed officers detained Arrieta and demanded that he turn over his cellphone. Arrieta's cell phone was seized even though there were available methods of copying the video from the cell phone without seizing the phone. Plaintiffs are informed and believe, and thereon allege, that the purpose of seizing Arrieta's phone was to tamper with and destroy evidence of the beating.

82. During the beating, eyewitnesses called 9-1-1 to report the beating and to urge someone to stop the beating.

83. In response to the 9-1-1 call, instead of halting the beating and caring for Mr. Silva, the Officer Defendants, Does 1-10, and other County employees

targeted the 9-1-1 callers for detention or arrest, and confiscated and deleted one or more of their cell phone videos.

84. Upon information and belief, the Defendant Officers at no time information that the Decedent had committed a felony.

**FIRST CLAIM FOR RELIEF**

**Fourth Amendment —Excessive Force (42 U.S.C. § 1983)**

(Against All Officer Defendants)

85. The foregoing allegations are incorporated as if re-alleged herein.

86. When the Officer Defendants beat the Decedent to death, they deprived the Decedent of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Decedent under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

87. When the Officer Defendants caused the Decedent's death by using improper restraint procedures, they deprived the Decedent of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Decedent under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

88. The beating was excessive and unreasonable, especially because Decedent was unarmed, the Decedent was struck in the head with batons, the Decedent was restrained such that he asphyxiated, the Decedent was outnumbered approximately 10 to 1 by the Officer Defendants, and the Decedent did not pose an imminent threat of death or serious bodily injury to the Officer Defendants or to anyone else.

89. As a result of the conduct of the Officer Defendants, Decedent suffered extreme pain and suffering and eventually suffered a loss of life and of earning capacity.

90. The Officer Defendants' beating of Decedent, together with the improper restraint procedures they used, violated their training.

91. The conduct of the Officer Defendants was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Decedent and therefore warrants the imposition of exemplary and punitive damages as to each of them.

92. As a result of the conduct of the Officer Defendants, Decedent suffered extreme pain and suffering and eventually suffered a loss of life and of earning capacity.

93. The Child Plaintiffs bring this claim as successors in interest to Decedent, and seek both survival and wrongful death damages for the violation of Decedent's rights.

94. The Child Plaintiffs seek attorney fees under this claim. The Child Plaintiffs are also seeking funeral and burial expenses and loss of financial support.

## SECOND CLAIM FOR RELIEF

**Fourth Amendment—Integral Participation (42 U.S.C. § 1983)**

(Against All Officer Defendants)

95. The foregoing allegations are incorporated as if re-alleged herein.

96. When the Officer Defendants beat the Decedent to death, they deprived the Decedent of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Decedent under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

97. The Officer Defendants integrally participated in the use of force against, beating of, and restraint of Decedent.

98. During the beating, some of the Officer Defendants held the Decedent down while other Officer Defendants struck him.

99. As a result of the use of force against, beating of, and restraint of Decedent, the Decedent died.

100. The conduct of the Officer Defendants was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Decedent and therefore warrants the imposition of exemplary and punitive damages as to each of them.

101. As a result of the conduct of the Officer Defendants, Decedent suffered extreme pain and suffering and eventually suffered a loss of life and of earning capacity.

102. The Child Plaintiffs bring this claim as successors in interest to Decedent, and seek both survival and wrongful death damages for the violation of Decedent's rights.

103. The Child Plaintiffs seek attorney fees under this claim. The Child Plaintiffs are also seeking funeral and burial expenses and loss of financial support.

**THIRD CLAIM FOR RELIEF**

**Fourth Amendment—Failure to Intervene (42 U.S.C. § 1983)**

(Against All Officer Defendants)

104. The foregoing allegations are incorporated as if re-alleged herein.

105. When the Officer Defendants beat the Decedent to death, they deprived the Decedent of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Decedent under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

106. The Officer Defendants failed to intervene in the use of force against, beating of, and restraint of Decedent.

107. The Officer Defendants were all present at the time of the Decedent's death.

108. At the time of Decedent death, he was being restrained, and force was being used against him. It would have been clear to a reasonable officer under the circumstances that the restraint and use of force against the Decedent was killing him. However, none of the Officer Defendants intervened to prevent the Decedent's death.

109. The conduct of the Officer Defendants was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Decedent and therefore warrants the imposition of exemplary and punitive damages as to each of them.

110. As a result of the conduct of the Officer Defendants, Decedent suffered extreme pain and suffering and eventually suffered a loss of life and of earning capacity.

111. The Child Plaintiffs bring this claim as successors in interest to Decedent, and seek both survival and wrongful death damages for the violation of Decedent's rights.

112. The Child Plaintiffs seek attorney fees under this claim. The Child Plaintiffs are also seeking funeral and burial expenses and loss of financial support.

## FOURTH CLAIM FOR RELIEF

**Fourth Amendment —Denial of Medical Care (42 U.S.C. § 1983)**

(Against All Officer Defendants)

113. The foregoing allegations are incorporated as if re-alleged herein.

114. The denial of medical care for Decedent by the Officer Defendants deprived Decedent of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Decedent under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

115. As a result, Decedent suffered extreme pain and suffering and eventually suffered a loss of life and of earning capacity.

116. The Officer Defendants knew that failure to provide timely medical treatment to Decedent could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, causing Decedent great bodily harm, pain and suffering, and death.

117. The conduct of the Officer Defendants was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Decedent and therefore warrants the imposition of exemplary and punitive damages as to each of them.

118. The Child Plaintiffs bring this claim as successors in interest to Decedent, and seek both survival and wrongful death damages for the violation of Decedent's rights.

119. The Child Plaintiffs seek attorney fees under this claim. The Child Plaintiffs are also seeking funeral and burial expenses and loss of financial support.

**FIFTH CLAIM FOR RELIEF**

**Substantive Due Process (42 U.S.C. § 1983)**

(Against All Officer Defendants)

120. The foregoing allegations are incorporated as if re-alleged herein.

121. Salvador Silva had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in his familial relationship with his son, Decedent.

122. Merri Silva had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in her familial relationship with her son, Decedent.

123. Tara Garlick had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in her familial relationship with Decedent.

124. The Child Plaintiffs had cognizable interests under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in the minor plaintiffs’ familial relationship with their father, Decedent.

125. Decedent had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state

actions that deprive him of his right to life, liberty, or property in such a manner as to shock the conscience.

126. The aforementioned actions of the Officer Defendants, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of Decedent and Plaintiffs, and with purpose to harm unrelated to any legitimate law enforcement objective.

127. Specifically, the following conduct of the Officer Defendants shocks the conscience:

(a) beating the Decedent to death;

(b) beating the Decedent while he was restrained;

(c) beating the Decedent while Decedent screamed and begged for mercy;

(d) beating the Decedent while he was outnumbered approximately 10 to 1;

(e) using improper restraint procedures;

(f) ignoring Decedent's medical needs;

(g) causing the Decedent to be attacked with a police dog;

(h) attempting to cover up the killing of Decedent, including by (1) giving false statements and reports; (2) bullying, threatening, intimidating, detaining, arresting, and retaliating against eyewitnesses; and (3) confiscating, deleting, and destroying a cell phone video taken by an eyewitness; and

(i) integrally participating in or failing to intervene in the above misconduct, as described above;

128. The Officer Defendants acted under color of state law.

129. The Officer Defendants violated the substantive due process rights of Plaintiffs Merri Silva, Salvador Silva, Tara Garlick, and the Child Plaintiffs to be free from unwarranted interference with their familial relationship with Decedent.

130. The Officer Defendants caused Decedent's death.

131. As a direct and proximate cause of the acts of the Officer Defendants, the Decedent experienced severe pain and suffering and lost his life and earning capacity. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Decedent, and will continue to be so deprived for the remainder of their natural lives.

132. The conduct of the Officer Defendants was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Decedent and Plaintiffs and therefore warrants the imposition of exemplary and punitive damages as to each of the Officer Defendants.

133. The Child Plaintiffs bring this claim individually and as successors in interest to Decedent, and seek both survival and wrongful death damages for the violation of both their rights and Decedent's rights.

134. Plaintiffs Merri Silva and Salvador Silva bring this claim individually and seek wrongful death damages for the violation of their rights.

135. Plaintiff Tara Garlick brings this claim individually and seeks wrongful death damages for the violation of her rights.

136. All plaintiffs also seek attorney fees under this claim. Plaintiffs are claiming funeral and burial expenses and a loss of financial support.

## SIXTH CLAIM FOR RELIEF

**Municipal Liability – Ratification (42 U.S.C. § 1983)**

(Against Defendants County of Kern, Sheriff Youngblood, and Does 6-10)

137. The foregoing allegations are incorporated as if re-alleged herein.

138. The Officer Defendants acted under color of law;

139. The acts of the Officer Defendants deprived the Decedent and Plaintiffs of their particular rights under the United States Constitution.

140. A final policymaker, acting under color of law, who had final policymaking authority concerning the acts of Officer Defendants, ratified such acts and the bases for them. The final policymaker knew of and specifically approved of the acts of Officer Defendants.

141. A final policymaker has determined that the acts of the Officer Defendants were "within policy."

142. Upon information and belief, Does 6-10 and Youngblood determined that the conduct of the Officer Defendants was "within policy" despite the facts, without limitation, that the Decedent was unarmed, that the Decedent was struck in the head multiple times with a baton, and that the Decedent died in custody as a result of excessive force and improper restraint. Further, the Decedent never verbally threatened the officers and never attempted to punch or kick the Defendant Officers.

143. By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of Decedent. Further, Plaintiffs have been deprived of their right to a familial relationship with the Decedent.

144. Accordingly, Defendants each are liable to each Plaintiff for compensatory damages under 42 U.S.C. § 1983.

145. By reason of the aforementioned unconstitutional customs, practices, and policies, Plaintiffs have suffered the loss of Decedent's love, companionship, affection, comfort, care, society, and future support. In addition to wrongful death damages, Plaintiffs also seek punitive damages against the individual officers.

146. Plaintiffs also seek attorneys' fees.

**SEVENTH CLAIM FOR RELIEF**

**Municipal Liability – Failure to Train (42 U.S.C. § 1983)**

(Against Defendants County of Kern, Sheriff Youngblood, and Does 6-10)

147. The foregoing allegations are incorporated as if re-alleged herein.

148. The Officer Defendants acted under color of law;

149. The acts of the Officer Defendants deprived the Decedent and Plaintiffs of their particular rights under the United States Constitution.

150. The training policies of the Defendant County of Kern and its sheriff's department were not adequate to train its officers to handle the usual and recurring situations with which they must deal. Specifically, training was totally inadequate, without limitation, with respect to (a) restraint techniques, (b) positional or restraint asphyxia, (c) the use of force, (d) encounters with the mentally ill or individuals with disabilities, and (e) the provision of medical care to individuals in custody.

151. The Defendant County of Kern was deliberately indifferent to the obvious consequences of its failure to train its police officers adequately.

152. The failure of the Defendant County of Kern to provide adequate training caused the deprivation of the Decedent and Plaintiffs' rights the Defendant Officers. That is, the failure to train is so closely related to the deprivation of the Plaintiffs' rights as to be the moving force that caused the ultimate injury.

153. By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of Decedent.

154. Accordingly, Defendants each are liable to each Plaintiff for compensatory damages under 42 U.S.C. § 1983.

155. By reason of the aforementioned unconstitutional customs, practices, and policies, Plaintiffs have suffered the loss of Decedent's love, companionship,

affection, comfort, care, society, and future support. In addition to wrongful death damages, Plaintiffs also seek punitive damages against the individual officers.

156. Plaintiffs also seek attorneys' fees.

**EIGHTH CLAIM FOR RELIEF**

**Municipal Liability – Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

(Against Defendants County of Kern, Sheriff Youngblood, Does 6-10)

157. The foregoing allegations are incorporated as if re-alleged herein.

158. The Officer Defendants acted under color of law;

159. The Officer Defendants acted pursuant to an expressly adopted official policy or a longstanding practice or custom of the Defendant County of Kern.

160. The Officer Defendants were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with Decedent's death.

161. Defendants County of Kern, Sheriff Youngblood and Does 6-10, together with other County policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

(a) Using excessive force;

(b) Providing inadequate training regarding the use of force;

(c) Mistreating the mentally ill and persons with disabilities;

(d) Providing inadequate training regarding encounters with the mentally ill and persons with disabilities;

(e) Causing positional and restraint asphyxia of individuals in custody;

(f) Providing inadequate training with regard to positional and restraint asphyxia.

(g) Denying medical care to individuals in its custody;

(h) Providing inadequate training regarding the provision of medical care to individuals in its custody;

(i) Employing and retaining, as police officers and other personnel, individuals such as the Officer Defendants, who Defendant County at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force and mistreating the mentally ill and persons with disabilities;

(j) Inadequately supervising, training, controlling, assigning, and disciplining County police officers, and other personnel, including the Officer Defendants, who Defendant County knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

(k) Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling intentional misconduct by County police officers, including the Officer Defendants;

(l) Failing to discipline County police officers for misconduct, including but not limited to excessive force and mistreating persons with disabilities, and covering up the same;

(m) Failing to adequately discipline County police officers for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

(n) Ratifying the intentional misconduct of its police officers;

(o) Failing to properly investigate claims of excessive force and mistreatment of the mentally ill and persons with disabilities;

(p) Encouraging, accommodating, or facilitating a “blue code of silence,” “blue shield,” “blue wall,” “blue curtain,” “blue veil,” or simply “code of silence,” pursuant to which the County’s officers do not report other officers’ errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officer's wrongdoing.

162. Apart from the incident giving rise to this lawsuit, recent examples of the aforementioned customs and practices include, without limitation:

(a) Kern County sheriff's deputies shot and killed former NFL player David Lee "Deacon" Turner on July 10, 2011. Turner was unarmed.

(b) Ronnie Ledesma Jr. died after an altercation with Kern County sheriff’s deputies in August 2013. Ledesma was unarmed, but sheriff’s deputies used a police dog, batons, and “control holds” to subdue him.

(c) On December 18, 2010, Kern County sheriff's deputies killed Jose Lucero, who was unarmed and mentally ill. Lucero was shocked at least 29 times with a taser.

(d) On June 17, 2013, Wilfredo Ramos was 25 years old and unarmed when he died in the course of a struggle with Kern County sheriff's deputies.

163. By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of Decedent.

164. Defendants County of Kern, Sheriff Youngblood, and Does 6-10, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Decedent, Plaintiffs, and other individuals similarly situated.

165. By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, these Defendants acted with intentional, reckless, and callous disregard for the life of Decedent and for Decedent's and Plaintiffs' constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by these Defendants were affirmatively linked to and were a significantly influential force behind the injuries of Decedent and Plaintiffs.

166. Accordingly, these Defendants each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

167. By reason of the aforementioned unconstitutional customs, practices, and policies, Plaintiffs have suffered the loss of Decedent's love, companionship, affection, comfort, care, society, and future support. In addition to wrongful death damages, Plaintiffs also seek punitive damages against the individual officers.

168. Plaintiffs also seek attorneys' fees.

**NINTH CLAIM FOR RELIEF**

**Battery (Cal. Govt. Code § 820 and California Common Law)**

(Wrongful Death)

(Against All Defendants)

169. The foregoing allegations are incorporated as if re-alleged herein.

170. Defendants Sword, Greer, Miller, Kelly, Almanza, Brock, and Stephens, while working as police officers for the County Sheriff's Department, and acting within the course and scope of their duties, intentionally struck Decedent multiple times, including with their police batons, fists, and boots, including in the head.

171. Defendants Bright and Phillips, while working as officers for the California Highway Patrol, and acting within the course and scope of their duties, intentionally struck Decedent multiple times, including with their police batons, fists, and boots, including in the head.

172. As a result of the actions of Defendants Sword, Greer, Miller, Kelly, Almanza, Brock, Stephens, Bright, and Phillips, the Decedent suffered severe pain and suffering and ultimately died from his injuries and also lost his earning capacity. The Officer Defendants did not have legal justification for using the force against the Decedent, and said Defendants' use of force while carrying out their police officer duties was an unreasonable use of force, including because the Decedent was unarmed, because the Decedent was struck in the head with batons, and because the Decedent died as a result of the excessive force and improper restraint.

173. As a direct and proximate result of Defendants' conduct as alleged above, Decedent suffered extreme and severe mental anguish and pain and have been injured in mind and body. Plaintiffs also have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of Decedent, and will continue to be so deprived for the remainder of their natural lives.

Plaintiffs also are claiming funeral and burial expenses and a loss of financial support.

174. The County is vicariously liable for the wrongful acts of Defendants Sword, Greer, Miller, Kelly, Almanza, Brock, and Stephens, pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

175. The Child Plaintiffs bring this claim in each case individually and as a successor in interest to Decedent, and seek both survival and wrongful death damages for the violation of Decedent's rights.

176. The conduct of the Officer Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Decedent, justifying an award of exemplary and punitive damages against each Officer Defendant.

177. The Child Plaintiffs also seek attorney fees under this claim.

**TENTH CLAIM FOR RELIEF**

**Negligence (Cal. Govt. Code § 820 and California Common Law)**

(Wrongful Death)

(Against All Defendants)

178. The foregoing allegations are incorporated as if re-alleged herein.

179. The actions and inactions of Defendants were negligent and reckless, including but not limited to:

(a) the failure to properly and adequately assess the need to detain, arrest, and use force or deadly force against Decedent;

(b) the negligent tactics and handling of the situation with Decedent, including pre-beating negligence;

(c) the negligent detention, arrest, and use of force, including deadly force, against Decedent;

(d) the failure to provide prompt medical care to Decedent;

(e) the use of improper restraint procedures, leading to Decedent's death.

(f) the use of the police dog;

(g) the failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of Decedent;

(h) the negligent handling of evidence and witnesses;

(i) improper use of the police baton.

180. As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, Decedent was caused to suffer severe pain and suffering and ultimately died and lost earning capacity. Plaintiffs also have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of Decedent, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs also are claiming funeral and burial expenses and a loss of financial support.

181. County is vicariously liable for the wrongful acts of Defendants Sword, Greer, Miller, Kelly, Almanza, Brock, Stephens, and Does 1-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

182. The Child Plaintiffs bring this claim individually as successors in interest to Decedent, and seek both survival and wrongful death damages for the violation of Decedent's rights.

**ELEVENTH CLAIM FOR RELIEF**

**Bane Act (Cal. Civil Code § 52.1)**

(Against All Defendants)

183. The foregoing allegations are incorporated as if re-alleged herein.

184. California Civil Code, Section 52.1 (the Bane Act), prohibits any person from interfering with another person's exercise or enjoyment of his constitutional rights by threats, intimidation, or coercion.

185. Conduct that violates the Fourth Amendment violates the California Bane Act.[2] The Officer Defendants used excessive force under the Fourth Amendment, and otherwise violated the Fourth Amendment, as set forth in the First through Fourth Claims for Relief, *supra*. The use of excessive force included, without limitation, baton strikes to Decedent's head and improper restraint leading to the Decedent's death, even though the Decedent was unarmed.

186. Each of the Officer Defendants, acting within the course and scope of their duties, conspired to commit, attempted to commit, and actually committed violent acts against Decedent, together with other misconduct, including, but not limited to, the following:

(a) beating the Decedent to death;

(b) beating the Decedent while he was restrained;

(c) beating the Decedent while Decedent screamed and begged for mercy;

(d) beating the Decedent while he was outnumbered approximately 10 to 1;

(e) using improper restraint procedures;

---

[2] *See Chaudhry v. City of Los Angeles*, 2014 WL 2030195, at * 6 (9th Cir. May 19, 2014) (citing *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013).

(f) ignoring Decedent's medical needs;

(g) causing the Decedent to be attacked with a police dog;

(h) attempting to cover up the killing of Decedent, including by (1) giving false statements and reports; (2) bullying, threatening, intimidating, detaining, arresting, and retaliating against eyewitnesses; and (3) confiscating, deleting, and destroying a cell phone video taken by an eyewitness; and

(i) integrally participating in or failing to intervene in the above misconduct;

187. The Officer Defendants acts, as described above, interfered with the civil rights of Decedent and Plaintiffs, including, but not limited to, Decedent's rights to be free from unreasonable searches and seizures, to due process, to equal protection of the laws, to medical care, to be free from state actions that shock the conscience, and to life, liberty, and property.

188. On information and belief, Defendants intentionally and spitefully committed the above acts to discourage Decedent from exercising his civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights, which he was fully entitled to enjoy.

189. On information and belief, Decedent reasonably believed and understood that the violent acts committed by the Officer Defendants were intended to discourage him from exercising the above civil rights, to retaliate against him, or invoking such rights, or to prevent him from exercising such rights.

190. Defendants successfully interfered with the above civil rights of Decedent.

191. Decedent endured severe pain and suffering and ultimately died. Plaintiffs have been deprived of the life-long comfort, support, society, care, and

sustenance of Decedent, and will continue to be so deprived for the remainder of their natural lives.

192. The conduct of the Officer Defendants was a substantial factor in causing the harms, losses, injuries, and damages of Decedent and Plaintiff

193. The County is vicariously liable for the wrongful acts of Defendants Sword, Greer, Miller, Kelly, Almanza, Brock, and Stephens pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

194. The conduct of the Officer Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Decedent, justifying an award of exemplary and punitive damages.

195. The Child Plaintiffs bring this claim as successors in interest to Decedent, and seek both survival and wrongful death damages for the violation of Decedent's rights.

196. The Child Plaintiffs also seek attorney fees under this claim.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs TARA GARLICK, M.L.S., C.J.S., C.R.S., E.Z.S., J.S., MERRI SILVA, and SALVADOR SILVA request entry of judgment in their favor and against Defendants County of Kern, Donny Youngblood, Douglas Sword, Ryan Greer, Tanner Miller, Jeffrey Kelly, Luis Almanza, Brian Brock, David Stephens, Michael Phillips, Michael Bright, and Does 1-10, inclusive, as follows:

A. For compensatory damages, including both survival damages and wrongful death damages under federal and state law, in the amount to be proven at trial;

B. For funeral and burial expenses, and loss of financial support, in an amount to be proven at trial;

C. For punitive damages against the individual defendants in an amount to be proven at trial;

D. For interest;

E. For statutory penalties and a multiplier under the Bane Act;

F. For reasonable costs of this suit and attorneys' fees; and

G. For such further other relief as the Court may deem just, proper, and appropriate.

Respectfully Submitted,

DATED: July 16, 2014 LAW OFFICES OF DALE K. GALIPO

By *_/s/ Thomas C. Seabaugh_*
Dale K. Galipo
Thomas C. Seabaugh
Attorneys for Plaintiffs M.L.S., C.J.S., C.R.S.,E.Z.S., Merri Silva, and Salvador Silva

DATED: July 16, 2014 LAW OFFICES OF JOHN BURRIS

By *_/s/ Adante Pointer_*
Adante Pointer
Attorneys for Plaintiff J.S.

DATED: July 16, 2014 RODRIGUEZ & ASSOCIATES

By *_/s/ Chantal A. Trujillo_*
Chantal A. Trujillo
Attorneys for Plaintiff Tara Garlick

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury.

Respectfully Submitted,

DATED: July 16, 2014 LAW OFFICES OF DALE K. GALIPO

By *\/s/ Thomas C. Seabaugh*
Dale K. Galipo
Thomas C. Seabaugh
Attorneys for Plaintiffs M.L.S., C.J.S., C.R.S.,E.Z.S., Merri Silva, and Salvador Silva

DATED: July 16, 2014 LAW OFFICES OF JOHN BURRIS

By */s/ Adante Pointer*
Adante Pointer
Attorneys for Plaintiff J.S.

DATED: July 16, 2014 RODRIGUEZ & ASSOCIATES

By */s/ Chantal A. Trujillo*
Chantal A. Trujillo
Attorneys for Plaintiff Tara Garlick