James D. Weakley, Esq.        Bar No. 082853
Brande L. Gustafson, Esq.     Bar No. 267130
WEAKLEY & ARENDT, LLP
1630 East Shaw Avenue, Suite 176
Fresno, California 93710
Telephone: (559) 221-5256
Facsimile:  (559) 221-5262
Jim@walaw-fresno.com
Brande@walaw-fresno.com

Attorneys for Defendants, Sgt. Douglas Sword, Deputy Jeffrey Kelly, and Deputy Luis Almanza

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARA GARLICK, individually; MLS, CJS, CRS, EZS, minors by and through their guardian ad litem, JUDY SILVA, individually and as the Successors in Interest of DAVID SILVA, deceased,; J.S., individually and as successor in interest to DAVID SILVA, by and through her guardian ad litem ADRIANE DOMINGUEZ; MERRI SILVA, individually; SALVADOR SILVA, individually, <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF KERN, KERN COUNTY SHERIFF'S DEPARTMENT, SHERIFF DONNY YOUNGBLOOD, SGT. DOUGLAS SWORD, DEPUTY RYAN GREER, DEPUTY TANNER MILLER, DEPUTY JEFFREY KELLY, DEPUTY LUIS ALMANZA, DEPUTY BRIAN BROCK, DEPUTY DAVID STEPHENS, CHP OFFICER MICHAEL PHILLIPS, CHP OFFICER MICHAEL BRIGHT, and DOES 1 to 100, inclusive, <br><br> Defendants. | CASE NO. 1:13-CV-01051-LJO-JLT <br><br> **JOINT STATEMENT OF UNDISPUTED MATERIAL FACTS TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION** <br> [Fed. R. Civ. P. 56] <br><br> Date: January 19, 2016 <br> Time: 8:30 a.m. <br> Ctrm: 4 <br> The Honorable Lawrence J. O'Neill <br><br> Complaint Filed: July 8, 2013 <br> Trial Date: May 10, 2016 |

Defendants County of Kern ("County"), Kern County Sheriff's Department, Sheriff Donny

Youngblood ("Sheriff Youngblood"), Sergeant Douglas Sword ("Sgt. Sword"), Deputy Jeffrey Kelly

---

Joint Statement of Undisputed Material Facts to
Defendants' Motions for Summary Judgment

("Deputy Kelly"), Deputy Luis Almanza ("Deputy Almanza"), Deputy Ryan Greer ("Deputy Greer"), Deputy Tanner Miller ("Deputy Miller"), Deputy Brian Brock ("Deputy Brock"), Deputy David Stephens ("Deputy Stephens"), CHP Officer Michael Philips ("CHP Officer Phillips"), and CHP Officer Michael Bright ("CHP Officer Bright") (collectively "Defendants") have met and conferred with plaintiffs Tara Garlick; MLS, CJS, CRS, EZS, by and through their guardian ad litem, Judy Silva; J.S., by and through her guardian ad litem Adriane Dominguez; Merri Silva; and Salvador Silva[1] (collectively "Plaintiffs") and agree and stipulate that the following facts are admitted, without need for any other proof or evidence, for the purposes of the Defendants' motions for summary judgment only, in the following Joint Statement of Undisputed Material Facts ("JSUMF").

The parties jointly state these facts for the purposes of a summary judgment motion only. The parties reserve the right to dispute any of these facts at trial. The right to make evidentiary objections to any of these facts at trial is also expressly reserved, including objections based upon foundation. Where a fact is stated in terms of one event happening before or after another event, this is only for the purposes of establishing the chronological order of events; it does not imply any length of time.

| NO. | UNDISPUTED MATERIAL FACTS |
|---|---|
| 1. | Mr. Silva told his mother Merri Silva that Tara Garlick asked him to leave. She gave Mr. Silva $20.00 and watched him walk away with a friend of his. |
| 2. | On May 7, 2013 near midnight, Deputy Kelly responded to a call pending for service at the corner of Flower Street and Palm Drive to check on an intoxicated man. |
| 3. | Deputy Kelly learned from his MDC (multi-data computer) that the reporting party was a security guard with Kern Medical Center ("KMC"). |
| 4. | Deputy Kelly was in a Kern County Sheriff's Office uniform. |
| 5. | Deputy Kelly was driving a marked Kern County Sheriff's vehicle. |
| 6. | Deputy Kelly had his canine partner Luke with him. |
| 7. | Luke has been Deputy Kelly's canine partner since 2011 and they have training together as a team. |
| 8. | When Deputy Kelly first saw Mr. Silva he appeared to be laying on the ground by the stop sign on the southeast corner of Flower and Palm across from KMC. |

---

[1] Salvador Silva passed away while this case was pending and his son Chris Silva, as successor in interest, substituted into the case in a representative capacity for Salvador Silva's only claim for loss of familial relationship under the Fourteenth Amendment. *Doc Nos. 106, 111 & 113.*

Joint Statement of Undisputed Material Facts to
Defendants' Motions for Summary Judgment      2

| NO. | UNDISPUTED MATERIAL FACTS |
|---|---|
| 9. | Deputy Kelly parked his patrol vehicle and turned its spotlight on Mr. Silva before walking over to him. |
| 10. | From a police practices standpoint, a sternum rub is commonly performed to awaken an unconscious person. |
| 11. | Mr. Silva weighed 261 pounds and was 5 foot 11 inches tall. |
| 12. | Deputy Kelly weighed approximately 150 to 155 pounds and was about 6 foot 2 inches tall. |
| 13. | The police canine Luke was released from the patrol vehicle by Deputy Kelly pressing a button on his duty belt which opened the patrol door. |
| 14. | Once Deputy Kelly returned his canine partner Luke to his patrol car and had no further physical contact with Mr. Silva. |
| 15. | Deputy Almanza arrived after Sgt. Sword. |
| 16. | Deputy Almanza was in a Kern County Sheriff's Office uniform. |
| 17. | Prior to arriving on scene, Deputy Almanza had learned that he was being dispatched to respond to a 148 call relating to a subject down in the roadway, possibly intoxicated. The subject was described as a heavyset white male in a sleeveless shirt and shorts. |
| 18. | Both Deputy Kelly and Sgt. Sword requested medical aid for Mr. Silva. |
| 19. | CHP Officer Bright assisted Deputy Almanza in placing handcuffs on Mr. Silva. |
| 20. | Deputy Brock assisted a CHP officer by wrapping the hobble around one of Mr. Silva's legs. |
| 21. | The hobbles were retrieved by CHP officers. |
| 22. | Deputy Miller requested and received confirmation from dispatch that medical aid had been dispatched to the location. |
| 23. | The spit mask was removed after Mr. Silva vomited. |
| 24. | Mr. Silva was turned onto his side by Deputy Almanza. |
| 25. | Deputy Kelly, the first officer on scene, radioed for medical assistance to be dispatched to the scene. |
| 26. | Sergeant Sword, the second officer on scene, also radioed for medical assistance to respond. |
| 27. | Sergeant Sword's call for medical aid occurred before Mr. Silva was handcuffed. |
| 28. | Deputy Miller radioed to confirm that Sword's call for medical assistance had been received. |
| 29. | On arrival at the scene, Deputy Stephens observed a group of deputies and CHP officers in contact with Mr. Silva who was chest down on the ground, moving his legs, and attempting to push up off the ground. |
| 30. | Stephens put his knee on Mr. Silva's right shoulder and used his body weight to hold Mr. Silva down. |

| NO. | UNDISPUTED MATERIAL FACTS |
|---|---|
| 31. | Stephens also used a wrist lock on Mr. Silva to raise his arm. |
| 32. | Mr. Silva was moving or attempting to move the entire time between Stephen's arrival and the application of the hobble. |
| 33. | Mr. Silva abruptly stopped moving while he was prone. |
| 34. | Once on his side, Mr. Silva was monitored by Almanza. |
| 35. | Stephens was unaware of any cell phone video until he learned of it days later through the media. |
| 36. | When Brock arrived, Mr. Silva was on the ground moving and officers were in contact with him. |
| 37. | Brock replaced Sword on Mr. Silva's legs. Brock bent and crossed Mr. Silva's legs, holding them down with his body weight. |
| 38. | Brock assisted the CHP officer in applying one hobble, by wrapping it around one of Mr. Silva's legs. |
| 39. | Brock and Almanza both checked Mr. Silva for a pulse. |
| 40. | Miller pushed down on Brock's back at some point. |
| 41. | Miller had no direct physical contact with Mr. Silva. |
| 42. | Miller did not learn of any cell phone video until it was in the media. |
| 43. | Deputy Greer responded with Miller to the incident. They were the last of the defendant officers to arrive. |
| 44. | Greer placed a spit shield on Mr. Silva. |
| 45. | Mr. Silva vomited into the shield. |
| 46. | Mr. Silva was rolled onto his side after he vomited. |
| 47. | Greer let other officers know that Mr. Silva had vomited. |
| 48. | Greer saw Brock lying on Mr. Silva's legs and being pushed backwards. |
| 49. | Greer did not learn of any cell phone video until it was in the media. |
| 50. | Defendant Bright had no more physical contact with Mr. Silva after defendant Bright stepped away to clean his hands. |
| 51. | Defendant Phillips assisted to handcuff Mr. Silva. |
| 52. | Defendant Phillips did not use any physical force or his own body weight to hold Mr. Silva in place while he assisted to handcuff Mr. Silva. |
| 53. | Defendant Phillips assisted to deploy the first nylon leg restraint on Mr. Silva only by wrapping the safety hook of the nylon leg restraint around the chain of the handcuffs. |
| 54. | Defendant Phillips retrieved and assisted to deploy a second nylon leg restraint on Mr. Silva only by wrapping the open end of the restraint around one of Mr. Silva's ankles or legs. |

Joint Statement of Undisputed Material Facts to
Defendants' Motions for Summary Judgment           4

| NO. | UNDISPUTED MATERIAL FACTS |
|---|---|
| 55. | Defendant Phillips did not use any physical force or his own body weight to hold Mr. Silva in place while he attempted to deploy the first or second nylon leg restraints. |
| 56. | Defendant Phillips did not use any physical force or his own body weight to hold Mr. Silva in place while others attempted to restrain him. |
| 57. | The autopsy identified no broken bones. |
| 58. | At the time blood was collected from Mr. Silva, on or about 1:00 a.m. on May 8, 2013, he had a 0.095 g/100 mL Blood Alcohol Concentration (BAC), 2.9 ng/mL of Clonazepam, 30 ng/mL of Amphetamine, and 210 ng/mL of Methamphetamine in his blood. |
| 59. | Mr. Silva's family members did not know Mr. Silva to have mental health or emotional problems. |
| 60. | The Kern County Sheriff's Office ("KCSO") has a policy on the use of force. |
| 61. | KSCO Policy F-100 permits only that amount of force necessary under the circumstances confronting the deputy. |
| 62. | All KCSO deputies are trained on Policy F-100. |
| 63. | The KCSO has a policy on the use of a hobble. |
| 64. | All KCSO Deputies that carry a hobble are required to undergo training on Policy F-350. |
| 65. | KCSO Policy F-350 is available to all KCSO deputies. |
| 66. | The Kern County Sheriff's Office ("KCSO") has a policy on the use of batons. |
| 67. | All KCSO deputies are trained on Policy F-600. |
| 68. | Tara Garlick was not married to Mr. Silva. |
| 69. | Mr. Silva was never married. |
| 70. | Plaintiff Merri Silva (Mr. Silva's mother) never considered plaintiff Garlick to be her daughter-in-law. |
| 71. | Garlick and Mr. Silva never jointly prepared or jointly filed Federal or State tax information. |
| 72. | Garlick held her own separate checking account to which Mr. Silva was never a signatory. |
| 73. | Mr. Silva held his own separate checking account to which Garlick was never a signatory. |
| 74. | Mr. Silva had a debit card for his own separate checking account at Chase one month prior to his death which Garlick never used. |
| 75. | Mr. Silva held his own separate credit account one month prior to his death which Garlick was not authorized to use. |

| NO. | UNDISPUTED MATERIAL FACTS |
|---|---|
| 76. | Mr. Silva held his own separate credit account one month prior to his death which Garlick did not use prior to Silva's death. |

DATE: November 30, 2015     WEAKLEY & ARENDT, LLP

/s/ James D. Weakley (As authorized on 11/30/15)
James D. Weakley
Brande L. Gustafson
Attorneys for Defendants Jeffrey Kelly,
Douglas Sword, and Luis Almanza

DATED: November 30, 2015     THERESA A. GOLDNER,
KERN COUNTY COUNSEL

/s/ Marshall S. Fontes (As authorized on 11/30/15)
Marshall S. Fontes, Deputy County Counsel
Attorneys for Defendants County of Kern,
et al.

DATED: November 30, 2015     OFFICE OF THE ATTORNEY GENERAL

/s/ Daniel G. Eskue (As authorized on 11/30/15)
Daniel G. Eskue, Deputy Attorney General
Attorneys for Defendants
Michael Bright and Michael Phillips

DATED: November 27, 2015     RODRIGUEZ & ASSOCIATES

/s/Chantal A. Trujillo (As authorized on 11/27/15)
Daniel Rodriguez
Chantal A. Trujillo
Attorneys for Plaintiff Tara Garlick

DATED: November 27, 2015     LAW OFFICES OF DALE K. GALIPO
CHAIN | COHN | STILES

/s/Thomas C. Seabaugh (As authorized on 11/27/15)
Dale K. Galipo
Thomas C. Seabaugh
David K. Cohn
Neil K. Gehlawat
Attorneys for Plaintiffs MLS, CJS, CRS,
EZS, by and through their GAL Judy Silva;
and Merri Silva and Salvador Silva

| | |
|---|---|
| DATED: November 29, 2015 | THE LAW OFFICE OF JOHN L. BURRIS |
| | /s/ Adante D. Pointer (As authorized on 11/29/15)<br>ADANTE D. POINTER<br>Attorney for Plaintiff<br>J.S., by and through her guardian<br>ad litem, ADRIANE DOMINGUEZ |