# EXHIBIT 8

```
 1                  UNITED STATES DISTRICT COURT

 2                 EASTERN DISTRICT OF CALIFORNIA

 3                            - - -

 4   TARA GARLICK, individually;    )
     M.L.S., C.J.S., C.R.S., C.R.S. )
 5   and E.Z.S., minors, by and     )
     through their guardian ad litem,)
 6   JUDITH SILVA, in each case     )
     individually and as successors )
 7   in interest to David Silva,    )
     deceased, et al.,              )
 8                                  )
                 Plaintiffs,        )
 9                                  )        CASE NUMBER
            -vs-                    ) CV-13-01051-LJO-(JLTx)
10                                  )
     COUNTY OF KERN, a municipality,)
11   et al.,                        )
                                    )
12                Defendants.       )
                                    )
13   and consolidated action        )

14

15

16
                          DEPOSITION OF
17
              STEVEN B. KARCH, MD, FFFLM, FFSoc
18
                      OAKLAND, CALIFORNIA
19
                    MONDAY, OCTOBER 5, 2015
20

21
     ATKINSON-BAKER, INC.
22   COURT REPORTERS
     www.depo.com
23   (800) 288-3376

24   REPORTED BY:  VALERIE E. JENSEN HARRIS, CSR NO. 4401

25   FILE NO.: A90A995
```

```
 1                UNITED STATES DISTRICT COURT

 2                EASTERN DISTRICT OF CALIFORNIA

 3                          - - -

 4   TARA GARLICK, individually;    )
     M.L.S., C.J.S., C.R.S., C.R.S. )
 5   and E.Z.S., minors, by and     )
     through their guardian ad litem,)
 6   JUDITH SILVA, in each case     )
     individually and as successors )
 7   in interest to David Silva,    )
     deceased, et al.,              )
 8                                  )
                   Plaintiffs,      )
 9                                  )     CASE NUMBER
             -vs-                   ) CV-13-01051-LJO-(JLTx)
10                                  )
     COUNTY OF KERN, a municipality,)
11   et al.,                        )
                                    )
12                 Defendants.      )
                                    )
13   and consolidated action        )

14

15

16        The deposition of STEVEN B. KARCH, MD, FFFLM,

17   FFSoc, was taken, on behalf of the plaintiffs, at the

18   Alameda County Law Library, 125-12th Street, Conference

19   Room 3, Oakland, California, commencing at 3:08 p.m.,

20   Monday, October 5, 2015, before Valerie E. Jensen

21   Harris, CSR No. 4401.

22

23

24

25
```

```
 1                      A P P E A R A N C E S

 2


 3     FOR PLAINTIFFS M.L.S., C.J.S, C.R.S, E.Z.S, MERRI
       SILVA AND SALVADOR SILVA:
 4
           LAW OFFICES OF DALE K. GALIPO
 5         21800 Burbank Boulevard
           Suite 310
 6         Woodland Hills, California 91367
           BY:  DALE K. GALIPO, ESQ.         (Telephonic)
 7


 8     FOR SERGEANT DAVID SWORD, SERGEANT JEFFREY KELLY
       AND SERGEANT LUIS ALMANZA:
 9
           WEAKLEY & ARENDT
10         1630 East Shaw Avenue
           Suite 176
11         Fresno, California 93710
           BY:  JAMES D. WEAKLEY, ESQ.
12


13     FOR DEFENDANTS MICHAEL BRIGHT AND MICHAEL PHILLIPS:

14         STATE OF CALIFORNIA
           DEPARTMENT OF JUSTICE
15         OFFICE OF THE ATTORNEY GENERAL
           300 South Spring Street
16         Suite 1702
           Los Angeles, California 90013
17         BY:  DANIEL ESKUE, Deputy Attorney General


18


19     FOR KERN COUNTY:

20         KERN COUNTY COUNSEL
           1115 Truxtun Avenue
21         Fourth Floor
           Bakersfield, California 93301
22         BY:  SCOTT FONTES, ESQ.


23


24              -- Continued on the next page --


25
```

```
 1    FOR DEFENDANTS IN ARRIETA. V. COUNTY OF KERN
      (CV 14-00400):
 2
          RODRIGUEZ & ASSOCIATES
 3        2020 Eye Street
          Bakersfield, California 93301
 4        BY:  DANIEL RODRIGUEZ, ESQ.      (NO APPEARANCE)
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                         EXAMINATION

                                                    PAGE

   BY MR. GALIPO                                     6



                           EXHIBITS

   PLAINTIFFS:

       1    Curriculum vitae (30 pages)              55

       2    8-13-15 report (11 pages)                55

       3    Appendix E: Normal Organ Weights         55




              INSTRUCTIONS/DIRECTIONS NOT TO ANSWER



                            (None)



                  INFORMATION TO BE SUPPLIED



                            (None)
```

1    Q.   Did you understand that there was an issue
2  in the Silva case as to whether or not Mr. Silva died
3  of restraint asphyxia?
4    A.   Yes, I did.
5    Q.   And what information did you have or what
6  was the source of the information that led you to
7  understand that was an issue in the case?
8    A.   Primarily my conversations with
9  Mr. Weakley and a copy of the autopsy report done by
10 Doctor Carpenter, a copy of the coroner's investigator's
11 report, the toxicology report from National Medical
12 Services and reviewing the microscopic slides that
13 were prepared from the autopsy tissue.
14   Q.   Have you been involved in other cases
15 where the issue was whether or not the person died
16 of restraint or compression asphyxia, or however it's
17 worded?
18   A.   I like the "however."
19        Yes, I have.
20   Q.   How many other cases have you been involved
21 in where there was an issue as to whether or not the
22 person died of restraint asphyxia?
23   A.   Probably at least a dozen; more that were
24 never litigated.
25   Q.   So about a dozen that were litigated?

1     A.    Yes, sir.

2     Q.    -- if it's agreeable to yourself and
3  Mr. Weakley, we can attach a copy of your report as
4  Exhibit 2, particularly so the court reporter will
5  have the so many spellings she needs.

6     A.    All right.

7     Q.    Now, what did you understand your assignment
8  to be in this particular case?

9     A.    Primarily, I was to function to review
10 whether or not heart disease of significance was
11 present and, also, to review the other theories that
12 had been propounded and mentioned about what might
13 have been the cause of death.  They weren't specifically
14 to review the scene, talk about police procedure or
15 anything of that variety.

16    Q.    Okay.  I note on Page 3 of your report that,
17 as of the time of the writing of your report, you had
18 not reviewed any medical records.  Is that correct?

19    A.    That's correct.  And that's still --

20    Q.    I --

21    A.    I'm sorry.

22    Q.    Go ahead, Doctor.

23    A.    That's still correct.

24    Q.    Okay.  On the first page of your report,
25 you say (Reading): Dear Mr. Weakley, this communication

```
 1    is intended to be my full and complete report in the
 2    above referenced matter.
 3             Do you see that sentence?
 4       A.    Yes.
 5       Q.    And were you intending to include all of
 6    your opinions in your report?
 7       A.    Based upon what I had received.
 8             I guess I forgot the usual disclaimer,
 9    "Subject to receiving additional information."
10       Q.    Okay.  Have you received additional
11    information since the writing of your report?
12       A.    No.
13             But I should revise what I said to you.  I
14    also reviewed, for this report, the microscopic slides
15    of Mr. Silva's tissue.
16       Q.    Okay.  Do you believe that Mr. Silva had a
17    cardiac arrhythmia?
18       A.    Very likely, yes.
19       Q.    Do you have an opinion as to what type of
20    arrhythmia he had?
21       A.    No, but I think that's -- of the
22    possibilities, I'd say Torsades, depois.
23       Q.    What do you mean by that?
24       A.    Oh, T O R S A D E S, new word, small D,
25    E, P O... I S.
```

```
 1            That is a specific kind of rhythm.  It
 2   looks a little bit like a saw blade when you see it
 3   on the EKG, and it's seen in people with myocardial
 4   channelopathies.  And I think there's a strong
 5   possibility -- in fact, more likely than not --
 6   that he suffered from a myocardial channelopathy,
 7   if not some other genetic mutation.
 8       Q.   When do you think he had the cardiac
 9   arrhythmia?  While he was chest down?
10       A.   I really don't know.  I did not read
11   the paramedic run reports.
12            I do know that it really wouldn't matter
13   much whether he was chest down, except to make it less
14   likely that he'd have an arrhythmia.
15       Q.   I'm just wondering if you have an opinion
16   as to when he had the arrhythmia.
17       A.   No, sir.  I don't.
18            I mean, he was in full arrest when he arrived
19   at the hospital, and I've never seen any documentation,
20   other than secondhand or, now, thirdhand, from the
21   medical examiner's deputy, that, when the paramedics
22   arrived on the scene, he was pulseless.
23       Q.   Okay.  Do you think he went into cardiac
24   arrest at some point?
25       A.   Absolutely.
```

REPORTER'S CERTIFICATE OF CERTIFIED COPY

I, VALERIE E. JENSEN HARRIS, CSR No. 4401, Certified Shorthand Reporter in the State of California, certify that the foregoing pages 1 through 57 constitute a true and correct copy of the deposition of STEVEN B. KARCH, MD, FFFLM, FFSoc, taken on October 5, 2015.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated this 10th of October, 2015.

_____
VALERIE E. JENSEN HARRIS, CSR NO. 4401
signature requested