# EXHIBIT 11

*Theodore C. Chan, MD, FACEP*
5521 Brettonwood Court
San Diego, CA 92130
tcchan@ucsd.edu

August 21, 2015

Marshall Scott Fontes
Deputy
Office of the County Counsel
Administrative Center
1115 Truxtun Avenue, Fourth Floor
Bakersfield, CA 93301

RE: Garlick, et al. v. County of Kern, et al (David Sal Silva)
U.S.D.C. Case No. 1:13-CV-01051 LJO JLT

Dear Mr. Fontes:

At your request, and pursuant to Federal Rule of Civil Procedure 26, below is a written summary of my opinions regarding the above named case. My opinions are based on my training, experience and research as a Professor and Chair of Emergency Medicine in the Department of Emergency Medicine at the University of California San Diego School of Medicine and Health System. I have conducted numerous human research studies on the topic of restraint physiology and less lethal weapons that have been published in peer-reviewed medical journals and presented at national medical meetings and scientific assemblies. I am also a practicing emergency physician, board-certified in the specialty of emergency medicine, and a Fellow of the American College of Emergency Physicians and American Academy of Emergency Medicine.

In formulating my opinions regarding the specific issues of this case, I have relied upon my own scientific and clinical research on restraint physiology, a review of the current medical and scientific literature relevant to this case, and the specific materials you forwarded me regarding the above named case, including the Complaints related to the case, Kern County Sheriff's office Incident/Investigation Report and supplemental reports; Medical and autopsy records for Mr. Silva, videos of the incident, and deposition transcripts of Luise Almanza, Francisco Arrieta, Enrique Bravo, Michael Bright, Ryan Brock, Heather Blancart, Eugene Carpenter, Kelly Olson, Celinda Dorsett, Ryan Greer, Jeffrey Kelly, Jason Land, Danny Medina, Robert O'Connor, Maria Melendez, Tanner Miller, Michael Phillips, Sulina Quair, Brandon Rutledge, David Stephens, Douglas Sword, T.A., Mykal Turner, Laura Vasquez, and Joseph Williams. Except as noted, my opinions and testimony will be to a reasonable degree of medical certainty. If additional pertinent information is revealed and provided to me subsequent to this letter, my opinions may change.

1

*Theodore C. Chan, MD, FACEP*
5521 Brettonwood Court
San Diego, CA 92130
tcchan@ucsd.edu

Briefly, David Silva was a 33 year-old man who was involved in a combative altercation and struggle with law enforcement late night on May 7, 2013. During the incident, Mr. Silva was struck multiple times with baton strikes, and officers deployed a patrol dog canine in an attempt to gain compliance from him. During the struggle, Mr. Silva was restrained in the prone position, eventually with wrists handcuffed behind his back and legs secured in the hobble position. In addition, a spit mask was placed over his head.

Shortly after he was restrained, Mr. Silva was found to be unresponsive and in cardiopulmonary arrest. Paramedics on scene initiated CPR and resuscitative efforts and Mr. Silva was transported a short distance to the Kern County Medical Center Emergency Department. At the hospital, advanced cardiac life support measures including airway management, resuscitative medications, and electrical defibrillation were administered without a return of spontaneous circulation. Despite these efforts, Mr. Silva did not respond and he was subsequently pronounced dead early in the morning on May 8th.

On autopsy, the coroner attributed the cause of death to hypertensive heart disease, with other conditions contributing to death including acute intoxication, chronic alcoholism, severe abdominal obesity, chronic hypertension, and acute pulmonary-cardiovascular strain. As to how the injury occurred, the coroner noted the history of substance abuse and sequelae of properly applied restraint procedures.

It has been alleged that the manner in which Mr. Silva was restrained may have caused respiratory compromise and asphyxiation, or so-called positional or restraint asphyxia, that led to Mr. Silva's demise. By way of background, positional or restraint asphyxia is a term that was initially used to describe the deaths of individuals who were found in body positions that compromised respiratory function. Most commonly, these cases involved individuals in whom their position led to obstruction of the upper airway (such as from extreme head-neck hyperflexion) and who were alcohol intoxicated (to the point of being unable to remove themselves from the lethal position). In none of these original cases was the individual restrained in the prone position by law enforcement.[1]

In the late 1980s, the term positional asphyxia was then applied as a cause of death in reports of sudden deaths that occurred to persons who were being restrained while in custody. Proponents of this theory argued that individuals placed in the hobble position (hogtie, hobble or prone restraint position in which individuals were placed prone on their stomach with wrists handcuffed behind the back and ankles secured to the handcuffs) were unable to breathe because the position caused chest wall and abdominal restriction that prevented adequate expansion of the lungs and subsequently led to asphyxiation. However, many argued that other factors played a greater role in causing these deaths reported in the medical literature.

There is little scientific evidence to support the notion that prone restraint and body position results in life-threatening respiratory compromise or asphyxiation. The theory of positional asphyxia as applied to custody restraint was largely based on the work of Reay et al, who studied 10 healthy subjects after exercise and found delayed recovery of blood

2

*Theodore C. Chan, MD, FACEP*
5521 Brettonwood Court
San Diego, CA 92130
tcchan@ucsd.edu

oxygen levels and heart rate in the hobble position.[2] We conducted a more comprehensive study investigating the effects of body position on respiratory function after exertion that was published in the Annals of Emergency Medicine and reviewed in another article published in the American Journal of Forensic Medicine and Pathology.[3,4] In our study involving 15 human volunteers, we studied respiratory function in the sitting, supine (laying on the back), prone (laying on the stomach), and hobble position. While we found a slight progressive decrease in pulmonary function (the amount of air movement in the lungs), these changes were within normal range. Accordingly, we found no evidence of decreased blood oxygen levels or increased carbon dioxide levels (to suggest inadequate ventilation) in the hobble position. These findings have been confirmed by other independent investigators who found no significant decrease in blood oxygen levels in individuals placed in similar restraint positions.[5,6]

As a result of this evidence, Dr. Reay, one of the chief proponents of the positional asphyxia theory with prone restraint, has written that "the hog-tied prone position should be viewed as not producing significant physiologic respiratory compromise, and it does not produce any serious or life-threatening respiratory effects".[7] Moreover, a recent, large epidemiologic study of over 1000 police restraint cases found no association between prone positioning and death or asphyxiation.[8,9]

In Mr. Silva's case, individuals involved in the incident indicate that he was actively resisting, moving, and breathing while in the prone restraint position. Moreover, witnesses indicate that he was verbalizing during the time he was being restrained, including shouting and screaming according at times. Accordingly, it appears he was not suffering significant respiratory compromise such that he would have been at risk for asphyxiation while in the prone restraint position.

It has been suggested that additional forces either externally applied to Mr. Silva (such the force utilized by law enforcement personnel to restrain him in the prone position), or Mr. Silva's own obesity, may have resulted in additional compressive forces to his chest and abdomen that would have caused an inability to breathe and ventilate while restrained in the prone position. This compressive or mechanical asphyxia refers to the notion that additional weight force during the restraint causes greater respiratory compromise to an individual that can lead to asphyxiation. However, on autopsy, there was little evidence to suggest that he suffered any marked increased in pressure to the intrathoracic cavity as a result of weight force compression as is seen in true cases of compressive or mechanical asphyxiation.

In addition, we have conducted two studies investigating the effect of weight force while restrained on human volunteers. In our initial study, we found no evidence of hypoxia (decrease in oxygen levels) or hypoventilation (increase in carbon dioxide levels) in human subjects on whom moderate amounts of weight were placed on their back in the prone restraint position.[10] In our subsequent study, we placed up to 225 pounds of weight force on human subjects in the prone restraint position and found no life-threatening abnormalities in ventilation.[11] These results are consistent with other investigators who

3

*Theodore C. Chan, MD, FACEP*
5521 Brettonwood Court
San Diego, CA 92130
tcchan@ucsd.edu

have conducted similar weight force studies on the prone restraint position and found no evidence of hypoxia to indicate risk for asphyxiation.[12]

Some have suggested that obese individuals such as Mr. Silva (his body mass index or BMI was greater than 30 kg/m2) may suffer respiratory compromise as a result of their large abdominal pannus causing compression of their thoracic cavity when in the prone position. This idea remains controversial as the prone position is often used in critically ill patients in intensive care units to actually improve pulmonary dynamics. More pertinent to Mr. Silva's case, we previously conducted a study investigating the respiratory effects of the prone and hobble positions in obese individuals with BMIs > 30 kg/m2 and found no evidence of respiratory compromise or hypoventilation when measuring oxygen or carbon dioxide levels.[13]

In conclusion, it is my opinion that Mr. Silva's death was not caused by positional or restraint asphyxiation as a result of his prone or hobble restraint body position, nor did it occur as a result of the actually application of the restraint by law enforcement personnel.

In accordance with the Rules of Civil Procedure, my compensation for services rendered in association with this case are $500/hour, including travel time and expenses. Prior cases in which I have provided testimony over the past four years are: Petrisor v. City of Bellevue, Washington, 2011; Gabales v. County of San Joaquin, 2011; Burdine v Kaiser, Ohio, 2011; Smith v. Gorman, Minnesota, 2013; Blondin v. City of Snohomish Police Department, Seattle, Washington, 2014; Hesterberg v. National Park Service, San Francisco, California, 2014; Flannery v City of Indianapolis, Indiana, 2014.

Should you have any further questions, please do not hesitate to contact me at any time.

Sincerely,

Theodore C. Chan, MD
Professor of Emergency Medicine
Department of Emergency Medicine
University of California San Diego

4

*Theodore C. Chan, MD, FACEP*
5521 Brettonwood Court
San Diego, CA 92130
tcchan@ucsd.edu

## References

[1] Bell MD, Rao VJ, Wetli CV, et al: Positional asphyxiation in adults: a series of 30 cases from Dade and Broward County Florida medical examiner offices from 1982 to 1990. American Journal of Forensic Medicine and Pathology 1992; 13: 101.

[2] Reay DT, Howard JD, Fligner CL, Ward RJ: Effects of positional restraint on oxygen saturation and heart rate following exercise. American Journal of Forensic Medicine and Pathology 1989; 9: 16.

[3] Chan TC, Vilke GM, Neuman T, Clausen JL: Restraint position and positional asphyxia. Annals of Emergency Medicine 1997; 30: 578.

[4] Chan TC, Vilke GM, Neuman T: Reexamination of custody restraint position and positional asphyxia. American Journal of Forensic Medicine and Pathology 1998; 19(3): 201.

[5] Schmidt P, Snowden T: The effects of positional restraint on heart rate and oxygen saturation. Journal of Emergency Medicine 1999; 17(5): 777.

[6] Parkes J: Sudden death during restraint: a study to measure the effect of restraint positions on the rate of recovery from exercise. Med. Sci. Law 2000; 40(1): 39.

[7] Reay DT: Death in custody. Clinics in Laboratory Medicine 1998; 18(1): 1.

[8] Hall CA, McHale AMD, Kader AS, et al: Incidence and outcome of prone positioning following police use of force in a prospective, consecutive cohort of subjects. J Forensic Leg Med 2012;19:83-9.

[9] Hall C, Votova K, Heyd C, et al: restraint in police use of force events: Examining sudden in custody death for prone and not-prone positions. J Forensic Legal Med 2015; doi: 10/1016/j.jflm.2014.12.007.

[10] Chan TC, Neuman T, Clausen J, Eisele J, Vilke GM: Weight force during prone restraint and respiratory function. Am J Forensic Med Pathol 2004; 25(3):185-189.

[11] Michalewicz BA, Chan TC, Vilke GM, Levy SS, Neuman TS, Kolkhorst FW: Ventilatory and metabolic demands during aggressive physical restraint in healthy adults. J Forensic Sci 2007;52(1):171-175.

[12] Cary NRB, et al: The effect of simulated restraint in the prone position on cardiorespiratory function following exercise in humans. J Physiol 1998;525:30p.

[13] Sloane C, Chan TC, Kolkhorst F, et al: Evaluation of the ventilatory effects of the prone maximum restraint position o nobese human subjects. Forensic Sci Internat 2014; DOI: http://dx.doi.org?10.1016/j.forsciint.2014.01.017

5