# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARA GARLICK; MERRI SILVA; CHRIS SILVA; MINORS MAKEYLA L. SILVA, CHELSEA J. SILVA, CATELYN R. SILVA, AND ELI Z. SILVA, INDIVIDUALLY AS SUCCESSORS IN INTEREST TO DAVID S. SILVA, BY AND THROUGH THEIR GUARDIAN *AD LITEM*, JUDY SILVA; AND, MINOR JADE SILVA, INDIVIDUALLY AS SUCCESSOR IN INTEREST TO DAVID S. SILVA, DECEASED, BY AND THROUGH HER GUARDIAN *AD LITEM* ADRIANE DOMINGUEZ,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF KERN, IN ITS OFFICIAL CAPACITY; SERGEANT DOUGLAS SWORD, DEPUTIES JEFFREY KELLY, LUIS ALMANZA, RYAN BROCK, DAVID STEPHENS, TANNER MILLER, RYAN GREER, AND CHP OFFICERS MICHAEL PHILLIPS AND MICHAEL BRIGHT, EACH IN THEIR INDIVIDUAL CAPACITIES,<br><br>Defendants. | Case No. 1:13-CV-01051-LJO-JLT<br><br>ORDER ON THE PARTIES' MOTIONS IN LIMINE.<br><br>(Docs. 168-185) |

Plaintiffs Tara Garlick, Merri Silva, Chris Silva, and minors Makeyla L. Silva, Chelsea J. Silva, Catelyn R. Silva, and Jade Silva (collectively, "Plaintiffs") bring the instant civil rights action against Defendants County of Kern, Sergeant Douglas Sword, Deputies Jeffrey Kelly, Luis Almanza, Ryan Brock, David Stephens, Tanner Miller, Ryan Greer, and California Highway Patrol ("CHP") Officers Michael Phillips and Michael Bright (collectively, "Defendants"), alleging excessive force under 42 U.S.C. § 1983 ("Section 1983"). The case arises from the in-custody death of David S. Silva ("Silva" or "the Decedent") in the course of an encounter with County of Kern Sherriff's Deputies

and California Highway Patrol ("CHP") Officers on May 7, 2013. Plaintiffs claim that the officers' use of force violated Decedent's Fourth and Plaintiffs' Fourteenth Amendment rights. Defendants counter that their use of force was reasonable. The facts are otherwise known to the parties and need not be repeated here. *See* Doc. 157, Order on Defendants' Motions for Summary Judgment; *see also* Doc. 161, Pretrial Order. Pending before the Court are the parties' motions *in limine* (Docs. 168-185), which the Court deem appropriate for resolution without oral argument. *See* E.D. Cal. Civ. L.R. 230(g). For the reasons explained below, the Court decides the motions as follows.

## LEGAL STANDARD

A party may use a motion *in limine* as a procedural mechanism to exclude inadmissible or prejudicial testimony or evidence in a particular area before it is introduced at trial. *See Luce v. United States,* 469 U.S. 38, 40 n. 2 (1984); *see also United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Such motions allow parties to resolve evidentiary disputes before trial and avoid potentially prejudicial evidence being presented in front of the jury, thereby relieving the trial judge from the formidable task of neutralizing the taint of prejudicial evidence. *Brodit v. Cambra,* 350 F.3d 985, 1004-05 (9th Cir. 2003). Pretrial motions such as motions *in limine* "are useful tools to resolve issues which would otherwise clutter up the trial." *Palmerin v. City of Riverside*, 794 F.2d 1409, 1413 (9th Cir. 1986); *see also Jonasson v. Lutheran Child and Family Services,* 115 F.3d 436,440 (7th Cir. 1997) ("[A] motion in limine is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings.").

Motions *in limine* that exclude broad categories of evidence are disfavored, and such issues are better dealt with during trial as the admissibility of evidence arises. *See, e.g., Brown v. Kavanaugh*, No. 1:08-CV-01764-LJO, 2013 WL 1124301, at *2 (E.D. Cal. Mar. 18, 2013) (citing *Sperberg v. Goodyear Tire & Rubber, Co.,* 519 F.2d 708, 712 (6th Cir. 1975); *see also In re Homestore.com, Inc.*, No. CV 01-11115 RSWL CWX, 2011 WL 291176, at *2 (C.D. Cal. Jan. 25, 2011) (holding that motions *in limine* should "rarely seek to exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial"); *Cf. Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2012 WL 1189898, at *4 (N.D. Cal. Jan. 4, 2012) (concluding that "a broad categorical exclusion" was unwarranted).

Additionally, some evidentiary issues are not accurately and efficiently evaluated by the trial judge in a motion *in limine*, and it is within the district court's discretion to defer ruling until trial when the trial judge can better estimate the impact of the evidence on the jury. *See, e.g., United States v. Amaro*, 613 F. App'x 600, 602 (9th Cir.), *cert. denied sub nom. Stewart-Hanson v. United States*, 136 S. Ct. 276 (2015); *see also Jonasson,* 115 F.3d at 440.

**DISCUSSION**

## I.   PLAINTIFFS' MOTIONS IN LIMINE

Plaintiffs bring six motions *in limine* ("MIL"), which the Court addresses in turn.

### 1.   to Exclude Facts Not Known to the Individual Defendants at the Time of the Incident (Doc. 180, Plaintiffs' MIL No. 1).

Plaintiff seeks to exclude any and all evidence regarding information not known to the Defendant officers at the time of the incident. Specifically, Plaintiffs seek to exclude evidence related to: any prior drug use by Silva; any prior drug use by any other member of Silva's family, including Tara Garlick ("Garlick"); any reference to drugs; any reference to a post-mortem toxicology test; and, any reference to argument or fights between Silva and Garlick. Plaintiffs argue such information is irrelevant because Defendants were unaware of them at the time they used force against Silva. *See* Fed. R. Evid. 401). Plaintiffs also contend that any argument that Silva was engaged in any specific conduct based solely on his prior behavior would involve an improper inference based on his character. *See* Fed. R. Evid. 404(a)(1). Third, Plaintiffs argue that any reference to this information would be "dangerously" prejudicial at trial and would necessitate mini-trials about prior incidents which are irrelevant to the central question of whether the officers' conduct was objectively reasonable. *See* Fed. R. Evid. 403.

The Court **DENIES IN PART** and **GRANTS IN PART** Plaintiffs' motion, as follows. As to Silva's drug use, the Court **DENIES** the motion in substance, conditioned on a representation from Defendants' counsel that there exist timely designated experts to explain the physical cause and effect of the drug and alcohol use in regards to demeanor, cause of death, longevity, and quality of life. Absent such representation by counsel, the motion is **GRANTED**.  Under no circumstances may any potential testimony be used as character or propensity evidence, and to that extent the

Court **GRANTS** the motion. Upon review of the Rule[1] 403 issues, the Court concludes that preclusion on this ground is not appropriate. As to evidence of domestic disputes between Silva and Garlick, such evidence may be used, if appropriate and established, for impeachment purposes and may also be used on the issue of damages, and in that way the Court **DENIES** the motion.

### 2. to Exclude Garlick's Prior Drug History (Doc. 181, Plaintiffs' MIL No. 2)

Plaintiff seeks to exclude any and all evidence regarding Garlick's drug history, including that she temporarily lost custody of her children subsequent to Silva's death due to her drug history arguing that it is irrelevant, impermissible character evidence, and is more prejudicial than probative. *See* Fed. R. Evid. 401, 403, 404.

The Court concludes that any and all evidence about Garlick's drug history is precluded as impermissible character evidence. However, as it relates to damages, the Rule 403 analysis weighs in favor of admission rather than preclusion. For that reason, the Court **DENIES** the motion **WITHOUT PREJUDICE**. This is not to say that such evidence will be admitted. Rather, this ruling simply means the matter will not be precluded pre-trial. In sum, the foundation for such expert opinions on this topic must first be established before any such opinions are solicited and/or expressed.

### 3. to Exclude Facts that One of Garlick's Neighbors Molested Silva's Two Youngest Children Subsequent to His Death (Doc. 182, Plaintiffs' MIL No. 3).

Plaintiffs seek to exclude any and all evidence related to the alleged molestation, subsequent to Silva's death, of Silva's two youngest daughters on grounds that the allegation is irrelevant, constitutes hearsay, lacks foundation, and is more prejudicial than probative. *See* Fed. R. Evid. 401, 802, 602, 403.

The Court finds that evidence related to the alleged molestation by one of Garlick's neighbors of Silva's two youngest daughters is probative for two reasons. First, it goes to witness Dr. Kaser-Boyd's credibility. Second, it is relevant to the calculation of Plaintiffs' damages where two minor Plaintiffs may have suffered emotional harm separate from the loss of their father. The probative value outweighs any risk of prejudice, jury confusion, or undue consumption of time. If

---

[1] Hereinafter, references to the "Rules" or "Rule" indicate the Federal Rules of Evidence.

counsel offers admissible evidence that the alleged event(s) actually happened <u>AND</u> expert evidence that it is probable that it caused emotional trauma that is being blamed for the death, then it is relevant. The motion is **DENIED WITHOUT PREJUDICE**.

**4.  to Exclude Opinions and Testimony of Harold L. Seymour, Ph.D. (Doc. 183, Plaintiffs' MIL No. 4).**

Plaintiffs make a *Daubert* motion to exclude the expert testimony and opinions of Harold L. Seymour, Ph.D. on the basis that he never interviewed the Silva children or members of the Silva family, and never conducted any psychological testing of the children. Moreover, Plaintiffs contend that Dr. Seymour has never testified with respect to psychological trauma in a case involving a minor child where he had not interviewed the child. Plaintiffs argue that Dr. Seymour's opinions lack foundation and should be excluded under the rule in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591-92 (1993) and Rule 702, or in the alternative, Rule 403.

The Court finds that Plaintiffs' arguments go to weight, not admissibility. The Court finds that, as Defendants contend (*see* Doc. 203), Dr. Seymour's review of Dr. Kaser-Boyd's report, interview notes, and test results may provide sufficient foundation, consistent with the requirements under Rule 702 and *Daubert*, 509 U.S. at 591-92, to allow Dr. Seymour to opine as to Dr. Kaser-Boyd's methodology and to rebut her opinions. However, the proper foundation must be laid for such testimony to be admissible. The motion is **DENIED WITHOUT PREJUDICE**.

**5.  to Exclude Defense Expert Steven Karch, M.D., Theodore Chan, M.D., and Frank Sheridan M.D. from Testifying (Doc. 185, MIL No. 5).**

Plaintiffs argue that Defendants have retained three expert witnesses who will testify that "during the encounter with the individual defendants (in which Silva was struck with batons, bitten by a dog, restrained, hogtied, and compressed for as long as 10 minutes with multiple defendants' weight on his back) he spontaneously died of unrelated or natural causes." Doc. 185 at 3:6-10. Plaintiff contends that these opinions are "junky." *Kumho Tire Co., Ltd v. Carmichael*, 526 U.S. 137, 159 (1999) (Scalia, J., concurring). About these experts—Dr. Theodore Chan, Dr. Frank Sheridan, and Dr. Steven Karch—Plaintiffs contend that, under *Daubert*, testimony should be precluded. First, Plaintiffs contend that Dr. Chan's studies were funded by the City of San Diego in

preparation for litigation and are unreliable under 702 and *Daubert* principles. *See Daubert*, 509 U.S. at 594-95. Plaintiffs posit that reliability is determined by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid," whereas relevance depends upon "whether [that] reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592–593. Plaintiffs argue that Dr. Chan's opinions should be excluded because he has not "reliably applied the principles and methods to the facts of the case." Rule 702. Moreover, Plaintiffs aver that the three experts opine that it is not possible to diagnose compressional asphyxia without petechial hemorrhages, but no medical literature suggests that these two phenomena are perfectly correlated. In other words, Drs. Chan, Sheridan, and Karch's opinions that it is impossible for one to happen without the other are incorrect and should be excluded under *Daubert*. In sum, Plaintiffs argue that because "there is no scientific, forensic, medical, or other evidence that Silva died from any cause other than his encounter with law enforcement," the three expert opinions are offered "to confuse and mislead the jury," and should be excluded under either 702 or *Daubert*. Doc. 185 at 11:23-26.

To the extent that Plaintiffs seek to preclude Drs. Chan, Sheridan, and Karch from testifying, the motion is **DENIED**. The Court finds that the three defense witnesses offered are designated experts with seemingly appropriate credentials. Plaintiffs' arguments in favor of total preclusion of the doctors' testimony go to factual disagreement, bias, and weight, but not their actual qualifications or an absence of the basis for opinions. However, there appears to be a *Daubert* issue regarding testimony that petechial hemorrhage is perfectly correlated to asphyxiation where no expert pointed to foundation to support the proposition. The motion in this limited way is **DENIED WITHOUT PREJUDICE**. The Court does not preclude such testimony at this stage, but reminds counsel that the foundation for such expert opinions on this topic must first be established before any such opinions are solicited and/or expressed. *See, e.g., Sanderson v. Int'l Flavors & Fragrances, Inc.*, 950 F. Supp. 981, 993-94 (C.D. Cal. 1996) ("the party presenting the expert must show that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology") (citing *Daubert*). Finally, Plaintiffs argue specifically about Dr. Karch that he has neither reviewed the Decedent's medical records, nor any of the statements or depositions of the involved officers, thus his testimony should be precluded.

Plaintiffs' argument turns on admissibility, not preclusion. That the Court has denied the motion does not relieve Defendants from establishing background, qualifications, and/or foundational basis for each opinion offered.

### 6. to Exclude Cumulative Defense Experts (Doc. 184, Plaintiffs' MIL No. 6).

Plaintiffs argue that Defendants have retained three expert witnesses who will testify about police practices: Curtis Jefferey Cope (police practices), David Reaver (police practices and dogs), and Clarence Chapman (police practices); and four medical experts offering the same or similar testimony about the medical issue of cause of death: Steven B. Karch (medical – cause of death), Theodore Chan (medical – cause of death), Frank P. Sheridan (medical – cause of death), and Eugene Carpenter (medical examiner – cause of death). Plaintiffs contend that these various duplicative experts are a "needless presentation of cumulative evidence." Therefore, Defendants should be limited to one police practices expert, one medical expert regarding the Decedent's cause of death, and one expert on the psychological harm suffered by Plaintiffs. *See* Fed. R. Evid. 403.

The Court finds that while there is clear crossover of the police practices experts on content (e.g., force), each expert is limited to opinions on the conduct of different officers (e.g., deputies or CHP), and one expert relates only to the actions of a police dog. As to the police practices experts, the Court **DENIES** the motion. Defendants retained four medical experts, including Dr. Karch, M.D., FFLM, FFSoc. and with a background in cardiac pathology, to review microscopic slides of various tissues taken during Silva's autopsy and to focus on reviewing the pathological condition of Silva's heart. In contrast, Defendants retained Dr. Chan, M.D., for his background in forensic pathology and experience studying respiratory functions related to positional or restraint asphyxia. Defendants retained Dr. Sheridan, M.D., to conduct an independent review of Silva's cause of death by reviewing the autopsy report and other investigative reports, whereas Dr. Carpenter is the original medical examiner. While the four medical experts have overlapping opinions concerning the cause of death, each has a different background from the others and arrives at conclusions from the formation of different processes. As to the medical experts, the Court **DENIES** the motion.

## II. DEFENDANTS' MOTIONS IN LIMINE

Defendants bring 23 motions *in limine*, which the Court addresses in turn.

1

2

**1. to Preclude Evidence of Indemnification of Any or All of the Individually Named Defendants by Their Employers and Vicarious Liability of County of Kern (Doc. 179, Defendants' MIL No. 1).**

3

4

Defendants seek to preclude Plaintiffs, their counsel and through them any witnesses from

5

soliciting testimony, or presenting evidence, regarding the individual defendants Sergeant Douglas

6

Sword and Deputies Jeffrey Kelly, Luis Almanza, Ryan Brock, David Stephens, Tanner Miller, and

7

Ryan Greer's indemnification for damages by Defendant County of Kern and CHP Officers

8

Michael Phillips and Michael Bright's indemnification for damages by the State of California.

9

Defendants argue that introduction of any such evidence would be more prejudicial than probative.

*See* Fed. R. Evid. 403.

10

The Court **GRANTS** the motion. That said, if a judgment is rendered and the Plaintiffs wish

11

a cautionary instruction that the jury may not consider who does or does not pay, Plaintiffs should

12

submit such instruction with <u>neutral</u> language after meeting and conferring with defense counsel. In

13

sum, if there is a judgment rendered, it is not an issue for the jury who does or does not satisfy it.

14

15

16

**2. to Preclude Use of Non-Authenticated and Non-Certified Transcripts of the Audio Statements Taken from Percipient Witnesses as part of the County of Kern Sheriff's Office Incident/Investigation Report, Case No. SR13-12817 (Doc. 179, Defendants' MIL No. 2).**

17

Defendants seek to preclude any and all testimony or evidence regarding the non-

18

authenticated and non-certified transcripts of audio interviews conducted during Kern County

19

Sheriff's Department's in-custody death investigation of the subject incident. Apart from each such

20

transcript being prepared from an audio recording without the certification of a certified court

21

reporter to verify the accuracy of the transcripts, there is also no indication of who prepared each of

22

the transcripts or when they were prepared, making it nearly impossible to lay the appropriate

23

foundation. *See* Fed. R. Evid. 901. Furthermore, such transcripts constitute hearsay and often

24

contain multiple layers of hearsay.

25

The Court concludes that if the transcripts cannot be agreed upon as to accuracy, the

26

videotapes themselves will be played. If that occurs, it is the obligation of the parties to be ready

27

with the exact segments a party wishes to play. The Court will not waste time in front of the jury.

28

This is pretrial preparation. For preparation purposes, the parties are required to give the opposing parties notice of the segments selected for use trial. In this way, the Court **DENIES** the motion.

**3. to Preclude Any Analogies, Comparison, or References to Hitler, Nazis, World War II Bunker Complexes, etc., in Relation to "Adlerhorst International, Inc." or Defense Expert David Reaver  (Doc. 179, Defendants' MIL No. 3).**

Defendants seek to preclude any and all testimony or evidence involving any analogies, comparisons, or references to Hitler, Nazis, World War II bunker complexes, in relation to "Adlerhorst International, Inc." or defense expert David Reaver on the grounds that it is irrelevant to Mr. Reaver's qualifications as an expert or whether or not the actions of the individual defendants were reasonable under the totality of the circumstances, and are also inaccurate. *See* Fed. R. Evid. 401, 402, 403, 702, 703.

The issue is remote, at best, and balancing probative versus consumption of time, the time concern prevails. The Court **GRANTS** the motion under Rule 403.

**4. to Preclude Evidence, Testimony, or Argument Concerning Any Lawsuits which Defense Expert David Reaver and/or His Business Adlerhorst International, Inc. Were and/or Are Named as Defendants (Doc. 179, Defendants' MIL No. 4).**

Defendants seek to preclude any and all evidence or testimony concerning any lawsuits which defense expert David Reaver and/or his business Adlerhorst International, Inc. were and/or are named as defendants, or inferring that Mr. Reaver is currently or in the past has been a party to any lawsuit, on the grounds that it is irrelevant, constitutes improper character evidence, and is more prejudicial than probative. *See* Fed. R. Evid. Rules 401, 402, 403, 404(b).

The Court finds that potential bias questions are appropriate. For example, those related to: any business affiliation Mr. Reaver has with a party to this litigation; that he has testified hundreds of times in police dog cases and never conceded a bad bite; or, that he receives compensation for his work as an expert (including what percentage of his income that produces). However, the filing of other lawsuits, no matter how many, is irrelevant. Eliciting evidence about the results of these lawsuits, from either side of this litigation, is a time issue and is precluded under Rule 403. In these ways, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

//

9

**5. to Preclude Evidence, Testimony, or Argument Concerning Dogs Being Used for Purposes of Torture or Inferring that the Involved K-9 Was Used to Torture Silva (Doc. 179, Defendants' MIL No. 5).**

Defendants seek to preclude any and all evidence and testimony concerning dogs being used for purposes of torture or inferring that officers used the involved K-9 to torture Silva on the grounds that it is irrelevant and more prejudicial than probative. *See* Fed. R. Evid. 401-403.

To the extent of the testimony as set forth in Plaintiffs' objections (Doc. 206 at 14:7-11), the Court **GRANTS** the motion.

**6. to Preclude Plaintiffs' Retained Expert Ron O'Halloran, M.D., from Offering Opinions or Testimony Regarding Restraint Asphyxia and Silva's Cause of Death (Doc. 179, Defendants' MIL No. 6).**

Defendants seek to preclude Plaintiffs' retained expert Ronald Louis O'Halloran, M.D., from offering expert opinions or testimony concerning any alleged restraint asphyxia, that any particular deputy or officer's restraint of Silva caused his death, or that any deputy or officer's failure to recognize earlier and address promptly Silva's respiratory distress or subsequent loss of consciousness was a cause of death, under Rule 702 and/or the principles in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).

This argument is spurious. The testimony sought to be excluded is in the realm of factual dispute and is well within the province of a decision by the trier of fact. The Court **DENIES** the motion.

**7. to Exclude Inflammatory Evidence (Doc. 168, Defendants' MIL No. 7).**

Defendants seek to exclude items of "inflammatory" evidence, testimony, or argument, specifically: testimony, reference, or argument that any Defendant officers "murdered" Silva; and, testimony, reference, or argument that Silva was "beaten to death" or suffered a "beating death" by police. Defendants argue that these terms call for improper legal and/or medical conclusions of lay witnesses and are more prejudicial than probative value. *See* Fed. R. Evid. 103, 401, 403, 701.

The Court **GRANTS IN PART** and **DENIES IN PART**. The target phrases may not be used by any non-expert, unless it is to describe an individual's feelings as those feelings relate to the issue of damages. The target phrases may be used in opening statement to describe feelings leading to damages and may be used in closing arguments.

**8. to Exclude Witness Opinions that Decedent's Father Died of a "Broken Heart" (Doc. 169, Defendants' MIL No. 8).**

Defendants seek to exclude any and all testimony or evidence that Silva's father, Salvatore Silva, died of a "broken heart" on the grounds that it lacks foundation, calls for improper legal conclusions of lay witnesses, are irrelevant to any matter at issue, and is more prejudicial than probative. *See* Fed. R. Evid. 103, 401, 403, 701, 702. Plaintiffs did not file an opposition.

The Court finds that such testimony constitutes inadmissible lay opinions and for that reason **GRANTS** the unopposed motion.

**9. to Exclude Lay Witness Opinions from Viewing Video Excerpts of the Subject Incident Where Such Witnesses Were Not Present at the Scene During the Incident (Doc. 170, Defendants' MIL No. 9).**

Defendants seek to exclude opinions or observations by lay witnesses who viewed video excerpts of the subject incident but who were not physically present at the scene to witness it, on the grounds that such testimony lacks foundation, invades the province of the jury, is irrelevant, and is more prejudicial than probative. *See* Fed. R. Evid. 103, 403, 701.

The motion does not extend to expert witnesses. The Court acknowledges that there are issues in this case about whether video footage exists, the alleged seizure and/or destruction of it. Defendant the County of Kern, which allegedly seized the footage, wishes to preclude testimony of witnesses who saw the content of the video footage before the alleged seizure. Unless the videos are at the trial and there is no contention about alteration, the witnesses may say what they saw on the videos—without conclusory language. In this limited way, the Court **DENIES** the motion. However, there is an enormous evidentiary difference between saying the officer's right fist struck the person's facial area ten times, versus saying the officer was beating the person. The former is fine, but the latter is precluded. In this way, the Court **GRANTS** the motion.

**10. to Exclude Gruesome, Gory, and Bloody Photographs of Decedent (Doc. 171, Defendants' MIL No. 10).**

Defendants seek to exclude all gruesome, gory and bloody photographs, including autopsy photographs and gruesome photographs of the subject scene on the grounds that the items are irrelevant and are more prejudicial than probative. *See* Fed. R. Evid. 103, 401, 403.

1  The photos are relevant. But that is not the primary objection. Rather, the primary objection

2  is under Rule 403. The overly broad description of the photos makes it impossible for the Court to

3  rule. Until such time as Plaintiffs actually seek to introduce such evidence to the jury, the Court

4  **DEFERS** ruling on the motion.

5  **11. to Exclude Other Civil Lawsuits, Citizen Complaints, and/or Settlements or Verdicts**
      **Involving Any of the Defendants (Doc. 172, Defendants' MIL No. 11).**

6

7  Defendants seek to exclude the following evidence, including whether: (1) one or more of

8  the individual Defendants may have been named as a defendant in a previous civil lawsuit, or the

9  facts underlying any other such lawsuit; (2) one or more of the individual Defendants may have

10  been the subject of a citizen complaint and/or tort claim concerning the use of excessive force or

11  failure to provide medical attention; (3) any other use of force incidents involving one or more of

12  the individual Defendants; as well as, (4) the total number of excessive force lawsuits involving the

13  Kern County Sheriff's Department; and, (5) verdicts awarded or settlements reached in police

14  misconduct cases against the Kern County Sheriff's Department or any other law enforcement

15  agency; on the grounds that such evidence is irrelevant, lacks probative value, is more prejudicial

16  than probative, and constitutes inadmissible character evidence. *See* Fed. R. Evid. 401, 403, 404.

17  Plaintiffs oppose the motion only on the limited grounds that Defendants may open the door

18  to such testimony or evidence at trial. *See* Doc. 210 at 3:1-3.

19  The Court therefore conditionally **GRANTS** the motion, as follows: such evidence is

20  excluded, unless Defendants broach these subjects in the course of trial. In that event, the issue is

21  subject to a motion outside the presence of the jury, for impeachment purposes only.

22  **12. to Exclude Evidence of Past Bad Acts of Any Individual Defendant and/or Any Other**
      **Lawsuits Against the County of Kern, or Any Law Enforcement Witness (Doc. 173,[2]**

23  **Defendants' MIL No. 12).**

24  Defendants County of Kern, Deputies Ryan Brock, David Stephens, tanner Miller, and Ryan

25  Greer, similarly seek to exclude evidence regarding prior bad acts or involvement with prior in-

26  custody deaths, specifically related to *Lucero v. Kern County et al.*, on the grounds that such

27  _____

[2] Counsel is again directed to use the Court's preferred font (Times New Roman, 12 point), and follow the other pleading
paper instructions found at http://www.caed.uscourts.gov/caednew/assets/File/Pleading%20paper%20instructions.pdf

28  (last visited April 13, 2016). *See* MIL Nos. 12-16 (Docs. 173-177).

evidence is irrelevant, lacks probative value, is more prejudicial than probative, and constitutes inadmissible character evidence. *See* Fed. R. Evid. 401, 403, 404.

As explained in regards to motion *in limine* No. 11, *supra*, and for the same reasons, the Court **GRANTS** the motion, subject to a motion for impeachment purposes only, outside the presence of the jury.

**13. to Exclude Evidence that is Protected by California Penal Code §§ 832.7 and 832.8 and California Evidence Code §§ 1040 and 1043, and the Officers' Right to Privacy (Doc. 174, Defendants' MIL No. 13).**

The individual Defendants seek to exclude any questioning and/or testimony regarding their personnel matters, prior complaints concerning job performance, or prior disciplinary issues on the grounds that such evidence is statutorily protected under state law, and is irrelevant, more prejudicial than probative, and constitutes inadmissible character evidence. *See* Fed. R. Evid. 401, 403, 404.

As explained in regards to motion in limine Nos. 11 and 12, *supra*, and for the same reasons, the Court **GRANTS** the motion, subject to a motion outside the presence of the jury for impeachment purposes only.

**14. to Exclude Testimony Regarding Opinions as to What David Silva Was Feeling During the Incident (Doc. 175, Defendants' MIL No. 14).**

Defendants seek to exclude opinion testimony from percipient witnesses as to what Silva was feeling during the subject incident on the grounds that it is speculation and improper lay witness opinion. *See* Fed. R. Evid. 701.

The words and/or sounds heard or overheard are admissible. So too are the observations seen by witnesses. However, because interpreting them is the work of the jury and not the witness, to that extent, the Court **GRANTS** the motion.

**15. to Preclude Plaintiffs and Other Non-Percipient Witnesses from Providing Speculative Testimony Regarding What Happened to David Silva during the Incident (Doc. 176, Defendants' MIL No. 15).**

The Court finds the motion unnecessary. All officers of the Court have an obligation not to request answers calling for speculation and to tell witnesses only to be responsive.

*//*

**16. to Preclude Testimony or Arguments Regarding the Alleged Deletion of Videos from Witness Maria Melendez's Cell Phone (Doc. 177, Defendants' MIL No. 16).**

The Court in a minute order has requested additional briefing on this issue. Defendants are directed to respond to the Court's inquiry (*see* Doc. 218) on or before Friday, April 15, 2016 at 3pm, to which Plaintiffs shall file their response on or before Monday, April 18, 2016 at 3pm.

**17. to Exclude Evidence or Witnesses Not Previously Disclosed to Defendants during Discovery (Doc. 178, Defendants' MIL No. 17).**

Pursuant to Federal Rule of Civil Procedure Rule 26(a) or (e), unless used for impeachment, Defendants seek to exclude all evidence or witnesses not previously disclosed to them during discovery, including: Item 53, "funeral pictures" (Doc. 158 at 42:6); Item 129 "Christopher Silva's birth certificate" (*id.* at 44:26); and, witness "David Delgado" (*id.* at 30:19).

The Court cautions the parties that trial is not to be a continued part of discovery. Rule 26 has its requirements, and noncompliance is not forgiven unless the opposing side shows harm or prejudice. The Court **GRANTS** the motion, and the undisclosed funeral photos as well as the undisclosed witness, David Delgado, are excluded. However, the birth certificate, a legal document that cannot be changed and which has limited relevant information—none of which is surprising to Defendants—will be allowed. To that limited extent, the Court **DENIES** the motion.

**18. to Preclude Plaintiffs' Retained Experts from Testifying at Trial as to Ultimate Facts, the Credibility of Witnesses, Legal Conclusions, Past Experiences, or Claims of Success (Doc. 178, Defendants' MIL No. 18).**

To the extent that the issue is properly outlined in Plaintiffs' opposition that their expert is "simply stating that the officers' actions, based on his training and experience, appear to be objectively unnecessary and unreasonable, as those words are used in common parlance," Doc. 197 at 3, and he does not offer an improper legal conclusion that Defendant officers violated Silva's Fourth Amendment rights, the Court **DENIES** the motion. Otherwise, as to the broader context of the motion pursuant to Rules 702 and 704 about which Plaintiffs apparently do not object, the Court **GRANTS** the motion.

//

//

**19. to Exclude All Video Recordings of the Incident Made by Francisco Arrieta (Doc. 178, Defendants' MIL No. 19).**

Defendants seek to exclude all video recordings of the subject incident made by Francisco Arrieta due to the spoken commentary contemporaneously recorded, on the grounds that it is irrelevant, more prejudicial than probative, improper lay opinion, and hearsay. *See* Fed. R. Evid. 401, 403, 701, 703, 802.

The video recording may be shown if the proper foundation is laid. To that extent, the Court **DEFERS** ruling on the motion until such time as Defendant actually seeks to introduce such evidence to the jury. Francisco Arrieta, the photographer/witness, may be asked questions about what he saw or heard, and he may use the audio to refresh his recollection (outside the jury's presence). He may use the transcript to refresh his recollection, assuming one has been prepared and agreed upon by the parties. Other than that, only appropriate questions that would be allowed are to be asked and answered by the witness. The commentary and speculation contained in the audio is not possible to parse without violating the time consumption issue found in Rule 403.

**20. to Preclude Plaintiff Jade Silva from Introducing Any Evidence Required to Be Disclosed as Part of Her Initial Disclosures or Pretrial Disclosures, and from Introducing Any Expert Testimony Due to Her Failure to Serve Any Required Disclosures (Doc. 178, Defendants' MIL No. 20).**

Pursuant to Federal Rule of Civil Procedure Rule 26(a), Defendants seek to exclude Plaintiff Jade Silva's undisclosed evidence or witnesses, specifically, 26 pictures of the Decedent and Jade Silva; a copy of a birthday card from Decedent to Jade Silva, dated 2003; three pictures of Jade Silva; and one picture of a "Justice for David Silva" prayer box.

The Court **GRANTS** the motion to the extent that Plaintiff Jade Silva may not testify to anything not previously provided to the defense under oath (either by Jade Silva's declaration, her deposition, or her answers to interrogatories). It appears that the case has been defended all along with the understanding that Jade Silva was, and is, a Plaintiff. Therefore, in all other respects, the Court **DENIES** the motion.

//

//

**21. to Preclude Plaintiffs and their Expert Witnesses from Using, Introducing, or Referring to Training Materials or Bulletins by the Los Angeles Police Department ("LAPD") or Any Other Non-Involved Law Enforcement Agency (Doc. 178, Defendants' MIL No. 21).**

These materials shall be excluded, unless there is expert testimony and a basis to say that the LAPD training materials or bulletins establish the standard of care, and therefore that the materials were directly or indirectly known by the individual Defendants, or that the Defendants were exposed, in some manner, to the materials. To that extent, the Court **GRANTS** the motion.

**22. to Preclude the Use of the CHP MVARS Recording of the Subject Incident (Doc. 178, Defendants' MIL No. 22).**

Defendants Phillips and Bright anticipate displaying at trial an audio/visual recording of the subject incident as captured by the Mobile Visual Audio Recording System (MVARS) installed in their CHP patrol vehicle and request that the terms of the Protective Order (Doc. 96 at 7-8) govern the display and distribution of the recording at trial.

There is no absolute privilege in existence simply because of a "confidential" designation in a discovery protective order or elsewhere. Accordingly, the Court **DENIES** the motion. Of course, counsel must lay a foundation before the recording is admitted.

**23. to Exclude Plaintiffs' Expert Witness Scott DeFoe from Offering Any Opinions Except Those Included in His Expert Report and that He Testified to at His Deposition (Doc. 178, Defendants' MIL No. 23).**

Defendants seek to preclude Plaintiffs' witness, Scott DeFoe, from testifying outside the scope of his expert report or deposition, under Rule 26(a), as to five specific opinions. Plaintiffs concede that of the five expert opinions in contention, four are irrelevant to this case in its current status. *See* Doc. 201 at 3:12-14. Therefore, as to the four opinions specified by the parties, the Court **GRANTS** the motion and these four opinions are excluded on relevance grounds.

Thus, the only issue remaining before the Court in the instant motion is whether DeFoe's fifth opinion—that "It is doubtful that the hobble was necessary during the incident" —should be precluded. Based on the representations of counsel it appears that, with the reasonable drawing of inferences, DeFoe included this fifth opinion at proper times in proper designations. This issue will

be left to counsel for impeachment during trial, and ultimately for the jury to make a factual determination. As to this fifth opinion by DeFoe, the Court **DENIES** the motion.

**III.     CONCLUSION AND ORDER**

      For the foregoing reasons, **IT IS HEREBY ORDERED** that the parties' motions *in limine* are **GRANTED IN PART** and **DENIED IN PART**, as set forth above.

IT IS SO ORDERED.

   Dated:  **April 14, 2016**                **/s/ Lawrence J. O'Neill**
                                            UNITED STATES DISTRICT JUDGE