UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARA GARLICK, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>COUNTY OF KERN, et al.,<br><br>    Defendants. | Case No.: 1:13-cv-01051 - LJO - JLT<br><br>FINDINGS AND RECOMMENDATIONS GRANTING APPROVAL OF THE COMPROMISE ON BEHALF OF MINOR PLAINTIFFS MLS, CJS, CRS, AND EZS<br><br>(Doc. 238) |

This matter arises out of the death of David Silva which, it is claimed, was caused by the application of excessive and unreasonable use of force by various law enforcement officers. Minor Plaintiffs MLS, CJS, CRS and EZS, are surviving children of the decedent, and seek approval of the settlement reached with Defendants, by and through their guardian ad litem Judy Garlick ("Petitioner"). (Doc. 238) For the following reasons, the Court recommends the motion for approval of the settlement be **GRANTED**.

**I.    Factual and Procedural History**

Plaintiffs initiated this action, alleging Defendants are responsible for the wrongful death of David Silva, who was the boyfriend of Plaintiff Tara Garlick, the father of the minor plaintiffs, and the son of Plaintiffs Merri and Salvador Silva. (*See generally* Docs. 2, 78) Plaintiffs assert eleven causes of action in the Second Amended Complaint: (1) excessive force in violation of the Fourth Amendment; (2) "integral participation" in violation of the Fourth Amendment; (3) failure to intervene

1

in violation of the Fourth Amendment; (4) denial of medical care in violation of the Fourth Amendment; (5) violation of the substantive due process rights of Salvador Silva[1], Merri Silva, Tara Garlick, the minor Plaintiffs, and David Silva; (6) municipal liability under 42 U.S.C. § 1983; (7) failure to train; (8) unconstitutional customs or policies; (9) battery; (10) negligence; and (11) a violation of the Bane Act, Cal. Civ. Code § 52.1 (*See generally* Doc. 78)

## II.    Settlement Approval Standards

No settlement or compromise of "a claim by or against a minor or incompetent person" is effective unless it is approved by the Court.  Local Rule 202(b).  The purpose of requiring the Court's approval is to provide an additional level of oversight to ensure that the child's interests are protected.  Toward this end, a party seeking approval of the settlement must disclose:

> the age and sex of the minor, the nature of the causes of action to be settled or compromised, the facts and circumstances out of which the causes of action arose, including the time, place and persons involved, the manner in which the compromise amount . . . was determined, including such additional information as may be required to enable the Court to determine the fairness of the settlement or compromise, and, if a personal injury claim, the nature and extent of the injury with sufficient particularity to inform the Court whether the injury is temporary or permanent.

Local Rule 202(b)(2).

The Ninth Circuit determined that Federal Rule of Civil Procedure 17(c) imposes on the Court the responsibility to safeguard the interests of child-litigants. *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011).  Thus, the Court is obligated to independently investigate the fairness of the settlement even where the parent has recommended it.  *Id.*, at 1181; *see also Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983) (holding that "a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian ad litem").  Rather than focusing on the amount of fees to be awarded, the Court must evaluate whether the net amount to the child is fair and reasonable "without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel" and "in light of the facts of the case, the minor's specific claim, and recovery in similar cases." *Robidoux*, 638 F.3d at 1181-1182.

---

[1] Chris Siva, the surviving son of Salvador Silva, was designated as the successor in interest following the death of Salvador Silva.  (Doc. 113)

### III. Discussion and Analysis

The petition for approval of the settlement reached on behalf of minors MLS, CJS, CRS and EZS sets forth the information required by Local Rule 202(b)(2). MLS is thirteen years old, CJS is eleven years old, CRS is seven years old, and EZS is five years old. (Doc. 238-1 at 2-3) MLS, CJS, and CRS are the daughters of the decedent, and CRS is the decedent's son. (*Id.*) The children are currently residing with their mother, Tara Garlick, in Nebraska. (*Id.*)

Petitioner Judy Silva—the guardian ad litem for MLS, CJS, CRS and EZS—asserts that the minor's damages "arise from (1) injuries suffered by their father, for which they can recover damages as their father's heirs and successor in interest, and (2) damages for the violation of their constitutional right to a familial relationship with their father and individual loss of their father's financial support, as well as the loss of love, comfort, affection, society and companionship that they would have shared with their father." (Doc. 238-1 at 4) Defendants have agreed to pay $3,000,000.00 to Plaintiffs MLS, CJS, CRS, EZS, Merri Silva and Chris Silva.[2] (*Id.* at 5) From this amount, $1,200,000 would go to the minor Plaintiffs. (*Id.* at 6)

#### A. Award to Minors MLS, CJS, CRS, EZS

After the payment of the proposed attorney fees and costs, the sum of $1,200,000 is to be allocated among MLS, CJS, CRS, EZS. (Doc. 238-1 at 6) Thus, each minor will receive $300,000.00 from the settlement. (*Id.*) The money allocated to the children will "be paid by Starr Indemnity and Liability Company; Starr Companies for the purchase of an annuity on behalf of [each minor] plaintiff." (*See id.* at 6- 11) Petitioner reports, "The parties have arranged for the purchase of a tax-free structured settlement annuity [policies] from Berkshire Hathaway Life Insurance Company of Nebraska through broker Tom Stevenson of Atlas Settlements." (*See id.* at 7-10) With the annuity policies, MLS has a guaranteed benefit of $446,000.00; CJS has a guaranteed benefit of $503,500.00; CRS has a guaranteed benefit of $551,500.00; and EZS has a guaranteed benefit of $593,000.00. (*Id.*) Thus, the total of the guaranteed benefits is $2,094,000.00.

///

---

[2] The total settlement in this action is $3,400,000.00. (Doc. 238-1 at 6) The remaining $400,000.00 is designated for minor Plaintiff J.S., also a child of the decedent. (*Id.*)

### B.       Proposed Attorney Fees and Costs

Out of the settlement proceeds, Plaintiffs' counsel will be awarded fees in the amount of $1,2000,000.00 and reimbursement for costs totaling $130,000.00. (Doc. 238-1 at 12) Accordingly, the total requested by counsel from the settlement is $1,330,000.00. (*Id.*) Neil Gehlawat—counsel for MLS, CJS, CRS, EZS, Merri Silva, and Chris Silva—reports that the plaintiffs entered into a retainer agreement "for a 40 percent contingency fee." (Doc. 283-3 at 2, Gehlawat Decl. ¶ 4) He reports the actions taken by the attorneys in the course of the litigation include:

(a) Investigation of the facts and circumstances of the incident;

(b) Filing the government claim, filing the 1st Amended Complaint and the 2nd Amended Complaint;

(c) Filing a motion for leave to amend, opposing 2 motions to dismiss, opposing 3 motions for summary judgment, filing 6 motions in limine and opposing 23 motions in limine, and attending and filing briefs for a settlement conference and mediation.

(*Id.* at 3, ¶ 5) In addition, Mr. Gehlawat reports the attorneys "collectively took and defended over 50 depositions in the case." (*Id.*) Based upon the number of hours expended during the course of the action, Mr. Gehlawat asserts that "[t]he total attorneys' fees amongst the 4 attorneys involved in the case from the two firms exceeded $1.2 million at the time the case was settled." (*Id.*, ¶ 6) Further, Plaintiffs' counsel identified costs that exceed the amount requested through this motion. (*See* Doc. 238-2 at 2-16)

Based upon the actions taken by counsel and the costs expended in the action—and the fact that Plaintiffs' guardian ad litem indicates her assent to the fees and costs requested (Doc. 283-1 at 12) —the Court finds the award is reasonable.

### C.       Recovery in Similar Actions

As noted above, the Court must consider the outcome of similar cases to determine whether the sum to settle the children's claims is reasonable. *See Robidoux*, 638 F.3d at 1181; *Salmeron*, 724 F.2d at 1363. Although Petitioner did not identify any similar actions to support the approval of the minors' compromise, the Court finds the recovery is appropriate considering those received by minors in other actions.

For example, in *Cotton ex rel. McClure v. City of Eureka, Cal.*, 2012 WL 6052519 at *1-2

4

(N.D. Cal. Dec. 5, 2012), the settlement for the child, following the death of her father after an altercation with police officers, was in the amount of $4,000,000. The court approved the minor's compromise and, after awarding fees and costs, the net amount to be received by the child was $2,646,765.90. *Id*. However, because the settlement required the proceeds to be invested in annuities, the total future payments to be received by the child would be $5,926,754.89. *Id.*

The settlement here exceeds those amounts awarded to other minors who suffered the loss of a parent during encounters with police officers. *See, e.g., E.S. v. City of Visalia,* 2015 WL 6956837 (E.D. Cal. Nov. 3, 2015) (approving a minor's compromise for net payment of $130,444.83 in action involving the shooting and killing of minor's father); *Armstrong v. Dossey*, 2013 WL 4676541 (E.D. Cal. Aug. 30, 2013) (finding fair and reasonable settlement of minors' claims for their father's death for $22,500 and $11,000 respectively); *Doe ex rel. Scott v. Gill*, 2012 WL 1939612, (N.D. Cal. May 29, 2012) (approving a minor's compromise in the net amount of $7,188.85 where minor's mother was shot and killed by police officers); *Swayzer v. City of San Jose*, 2011 WL 3471217 (N.D. Cal. Aug. 5, 2011) (approving a minor's compromise for net amount of $2,054.17 in the wrongful death action, where the minor's father died during the course of his arrest).

Based upon the information provided in the motion and the supporting documents, and considering the totality of the facts and circumstances of this case—and most particularly the excellent result achieved compared to similar actions—the Court finds the settlement agreement is fair, reasonable, and in the best interests of the children.

## IV.    Findings and Recommendations

Based upon the foregoing, it is **HEREBY RECOMMENDED**: that the petition to approve settlement of the minor's claims be **APPROVED** as follows:

1. That the motion to approve settlement of the minors' claims be **GRANTED**;
2. Defendants, County of Kern and its insurer, Starr Indemnity and Liability Company, Starr Companies and Defendants State of California and their insurer be DIRECTED to pay the combined sum of $3,400,000 in consideration of a full and final release and discharge of and from all claims arising from this action;
3. Of the full settlement, that $3,000,000 be directed to settle the claims, charges, and

demands of Plaintiffs MLS, CJS, CRS, EZS and Merri Silva and Chris Silva;

4. From the above settlement money, the defendants County of Kern be **DIRECTED** to pay $1,200,000.00—to be paid by Starr Indemnity and Liability Company; Starr Companies— for the purchase of a annuities on behalf of CJS, CRS, EZS.  The parties **SHALL** purchase a tax free structured settlement annuity policy from Berkshire Hathaway Life Insurance Company of Nebraska through broker Tom Stevenson of Atlas Settlements. The defendants County of Kern, Sgt. Douglas Sword, Deputy Ryan Greer, Deputy Tanner Miller, Deputy Jeffrey Kelly, Deputy Luis Almanza, Deputy Brian Brock and Deputy David Stephens shall execute a Settlement Agreement and Release and execute a "Qualified Assignment" of their obligation to make periodic payments pursuant thereto in compliance with I.R.C. Section 104(a)(2) and Section 130(c) of the Internal Revenue Code of 1986, as amended. Said assignment shall be made to BHG Structured Settlements, Inc. ("Assignee"). Upon doing so, the defendants will no longer be obligated to make further periodic payments and the Assignee will be the plaintiffs' sole obligor with respect to the future periodic payments;

4. The Assignee be **DIRECTED** to purchase a structured settlement annuities for $300,000.00 each for MLS, CJS, CRS, and EZS through Berkshire Hathaway Life Insurance Company of Nebraska.  The payments shall be assigned to BHG Structured Settlements, Inc. by way of a Qualified Assignment by the County's Insurer Starr Indemnity and Liability Company, Starr Companies. The payments will be guaranteed through the issuance of a Letter of Guarantee from Berkshire Hathaway Life Insurance Company of Nebraska, assumed under the Qualified Assignment. In accordance with the structured settlement agreement, the Assignee will fund the obligation to make payments through the purchase of annuities from BHG Structured Settlements, Inc. Said annuities shall provide guaranteed periodic payments (subject to annuity rates in effect at the time of purchase);

5. The Assignee be **DIRECTED** to file receipt of the purchase of the annuities within sixty days of any order adopting these Recommendations;

6.     The County Defendants be **DIRECTED** to pay the sum of $1,440,000.00 to Chain | Cohn | Stiles, Chris Silva and Merri Silva for the payment of attorney fees and costs, and the settlement amount owed to Chris Silva and Merri Silva;

7.     The State of California, on behalf of CHP Officers Michael Phillips and Michael Bright be **DIRECTED** to pay the sum of $360,000.00 to Chain | Cohn | Stiles, Chris Silva and Merri Silva;

8.     Payment to Chain | Cohn | Stiles and the Law Office of Dale K. Galipo in the sum of $1,330,000.00 for the payment of attorney fees and costs be **APPROVED**; and

9.     That the parties' be **DIRECTED** to file with the Court a stipulation for dismissal of the action with prejudice, and lodge a separate order, no later than ten days after these findings and recommendations are adopted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **July 13, 2016**          **/s/ Jennifer L. Thurston**
                                                UNITED STATES MAGISTRATE JUDGE